# J. G. *vs.* H. G.

*Divorce on account of Impotence — Jurisdiction of Courts of Equity in Applications for Divorce — Deed of Separation.*

Where, by organic defect of the female, existing at the time of marriage, there cannot be a natural and perfect coition—*vera copula*—between the parties, and the defect is permanent and incurable, the case comes within the legal definition of impotence, and will authorize a divorce *a vinculo.*

Courts of Equity in this State, on applications for a divorce, sit not in the exercise of their ordinary equitable jurisdiction, but as divorce Courts, and must be governed by the rules and principles established in the Ecclesiastical Courts in England, so far as they are consistent with the provisions of the Code.

A voluntary deed of separation between husband and wife, is not a bar to a *bona fide* application by the former for a divorce from the latter, on the ground of her impotence at the time of marriage.

APPEAL from the Circuit Court of Baltimore City.

This is an appeal from a decree of the Court below dismissing the bill of the appellant, which prayed a divorce *a vinculo matrimonii*, from his wife, the appellee, on the ground of her impotence, which existed at the time of their marriage. The facts of the case are sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, GRASON and MILLER, J.

*Geo. Wm. Brown* and *I. Nevett Steele*, for the appellant.

The evidence of the impotence of the appellee is clear and conclusive, but if the opinion of the Judge of the Circuit Court were correct, that the question was involved in doubt by reason of the conflict of medical testimony, there should

have been another examination, and it was error in the Court to refuse to order it. 2 *Bishop on Marriage and Divorce, secs.* 590 *to* 600; *Deane vs. Aveling,* 1 *Rob. Ecc. Rep.,* 279; *Briggs vs. Morgan,* 3 *Phill.,* 325, (1 *Eng. Ecc. Rep.,* 408;) *Devenbagh vs. Devenbagh,* 5 *Paige,* 554; *Newell vs. Newell,* 9 *Paige,* 25; *Le Barron vs. Le Barron,* 35 *Verm.,* 365; *Calkins vs. Long,* 22 *Barb.,* 97.

The impotence of either party at the time of marriage, is made, by Article 16, section 25 of the Code, ground for a divorce *a vinculo;* and impotence consists—first, in an incapacity of procreation from organic malformation; or, second, in incapacity for the act of copulation—and copulation, to come within' the meaning of the definition, must be natural and complete. Judged by either test, the appellee is incurably impotent, and was so at the time of her marriage. *Article* 16, *sec.* 25 *of the Code of Pub. Gen'l Laws;* 1 *Bishop on Mar. and Div.,* secs. 325 *to* 340; *Deane vs. Aveling,* 1 *Rob. Eccl. Rep.,* 279; *Briggs vs. Morgan,* 3 *Phill.,* 325, (1 *Eng. Eccl. Rep.,* 408;) *Brown vs. Brown,* 28 *Eng. L. & E.,* 95; *Ewens vs. Tytherleigh,* 9 *Law R.,* 424, (*N. S.;*) *X,* falsely called *Y. vs. Y.,* 34 *Law Journal,* 81, *and Lewis vs. Hayward,* 15 *Law Reporter,* 299.

The deed of separation does not constitute an estoppel or bar to the right of the complainant to have the marriage declared a nullity. It contains no covenant that the appellant will not sue for a divorce, and he has waived all application to set aside the settlement made on the appellee. No deed of separation can render a marriage valid which the law declares to be void *ab initio.* 1 *Bishop on Mar. and Div.,* secs. 631 *to* 639, *and secs.* 646–656; *Matthews vs. Matthews,* 1 *Sw. & T.,* 499, *and* 3 *Sw. & T.,* 161; *Spering vs. Spering,* 3 *Sw. & T.,* 211; *Hunt vs. Hunt,* 32 *Law J. Rep.,* 168; *Williams vs. Williams,* 35 *Law J.,* 85; *Lippy vs. Masonheimer,* 9 *Md.,* 316; *Benton vs. Benton,* 1 *Day,* 116; *Calkins vs. Long,* 22 *Barb.,* 97–103–106; *St. John vs. St. John,* 11 *Ves.,* 525; *Durant vs. Durant,* 1 *Hagg.,* 733; *Beeby vs. Beeby,* 1 *Hagg.,* 789.

J. G. *vs.* H. G.

*S. Teackle Wallis,* for the appellee.

The evidence does not establish such a state of facts as would entitle the appellant to a divorce, even if his own physical condition allowed him to urge the defects of the appellee. Barrenness is no ground of divorce, and the other sexual deficiencies alleged do not amount to impotence, under the decisions.

The deed of separation and settlement between the parties is an estoppel to the present proceedings, not only because of the provisions for such separation which it contains, but because it was a compromise of doubtful rights and of a pending controversy, deliberately and advisedly made, with a full knowledge of all the facts, and for the express purpose of preventing a painful and scandalous litigation and exposure. Whatever may be the disfavor with which the policy of the law regards arrangements for separation, made between husband and wife, where there is no legal ground for divorce, it cannot otherwise than approve and ratify them, where such ground is claimed to exist, as the foundation of his relief, by the very party who seeks to repudiate them.

Public policy might well nullify a deed of separation, in order to bring the parties together, but to do so in order to set them wider apart than they had agreed to be, would seem alike repugnant to reason and the interests of society. *Brown vs. Brown,* 5 *Gill,* 254, 255; *Devenbagh vs. Devenbagh,* 5 *Paige,* 558; *Wilson vs. Wilson,* 1 *House of Lords' Cases,* 554, 556, 567, 570–574, *and* 5 *House of Lords' Cases,* 40–59; *Jodrell vs. Jodrell,* 9 *Beavan,* 53, *and* 14 *Beavan,* 397; *A. vs. B.,* 1 *Prob. & Div. R., (L. R.,)* 561; *Brown vs. Brown,* 7 *Eq. Cases, (L. R.,)* 191; *Sills vs. Harding,* 8 *Eq. Cases,* 492, (*L. R.*); *Williamson vs. Williamson,* 1 *Johns., Chy.,* 491; *Sanders vs. Rodway,* 16 *Beavan,* 207; 3 *Leading Cases in Equity,* 388, 389–403, 404; *Hartle vs. Stahl,* 27 *Md.,* 157; 1 *Bishop on Marriage and Divorce, secs.* 105–339; *Matthews vs. Matthews,* 1 *Swabey & Tristram,* 501, *and* 3 *Swabey & Tristram,* 163, 164.

BARTOL, C. J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellant, praying for a divorce *a vinculo,* on the ground of the alleged impotence of the appellee.

It appears from the pleadings and proofs that the parties to this suit were married in Baltimore on the 31st day of March, 1864; the appellant then being 49 years of age and the appellee 28. They started on a tour to the West immediately after the marriage; physical impediments to the consummation of the marriage having been discovered, the appellee submitted to an examination of her person by Dr. Thomas Wood and Dr. S. O. Almy, eminent physicians and surgeons of Cincinnati, whose testimony is contained in the record. After the return of the parties to Baltimore, on the 25th of May, 1864, another surgical examination was made by Dr. Inloes, the family physician of the appellee, aided by Prof. Nathan R. Smith, the testimony of these physicians is also in the record.

On the 29th day of June, in the same year, a deed of separation was entered into, whereby the sum of ten thousand dollars was conveyed and secured by the appellant to certain trustees therein named, for the separate use of the appellee for her support, she agreeing to relinquish all further claim or interest in his estate, and the parties mutually agreeing to live separate from each other as if unmarried.

The separation under the deed continued for nearly three years, when on the 8th day of May, 1867, this bill was filed. One of the prayers of the original bill was that the deed of separation might be set aside; but in the progress of the cause, on the 15th day of February, 1869, a paper was filed by the complainant, signed by his solicitors, waiving all that part of his bill and the prayer therein seeking to set aside the deed of settlement; and leaving all vested rights in the trustees, and in the appellee under the deed unassailed, and unaffected by any decree in the cause. The only question therefore presented by this appeal arises upon the prayer for a divorce.

The appellee opposes the application for a divorce upon two distinct grounds. 1st. The alleged impotence is denied. 2d. It is contended that the deed of separation is a bar and estoppel to the right of the complainant to maintain the present suit.

" The impotence of either party at the time of the marriage," is one of the causes prescribed in the Code, for which the Court is authorized to decree a divorce *a vinculo matrimonii.* 1 *Code, Art.* 16, *sec.* 25.

Has the alleged impotence of the appellee been proved? A careful examination of the evidence has convinced us that this question must be answered in the affirmative.

Without repeating here at length, or in detail, the evidence on this most delicate and painful question, it may be stated that the testimony of the examining surgeons establishes the following facts:

That the physical condition of the appellee, at the time of the marriage, was that of a very imperfect development of the sexual organs, both externally and internally. These organs were in a rudimentary condition, evincing that their development had ceased and been arrested before the age of puberty. She had never experienced the monthly sickness to which females of mature age are subject; and was without the natural passion or desire incident to woman.

The rudimentary condition of her sexual organs, and their imperfect development, not only rendered conception impossible, but there was on her part an incapacity for *vera copula.* That is to say, she was not capable of the act of generation in its natural and ordinary meaning, but only of incipient and imperfect coition.

In giving the results of their examination, the surgeons differ somewhat as to the degree or extent of the organic defects; but we have stated the conclusions which appear to us to be established by their testimony. They all concur in saying that the defect is incurable.

Whatever differences of opinion may have arisen as to the legal definition of impotence; it is well settled that if by

reason of malformation or organic defect existing at the time of the marriage, there cannot be natural and perfect coition, *vera copula*, between the parties; and it appears that the defect is permanent and incurable; the case comes within the legal definition of impotence, and is cause for nullity of marriage. *Deane vs. Aveling*, 1 *Rob. Ecc. R.*, 279; *Devenbagh vs. Devenbagh*, 5 *Paige*, 554; 1 *Bishop on M. & D.*, secs. 325 *to* 340.

The charge made by the appellee in her answer, that the difficulty in consummating the marriage proceeded from physical defect or incapacity on the part of the appellant has not been sustained by proof; and we are of opinion upon all the evidence in the cause that the appellant is entitled to a divorce *a vinculo;* unless by reason of the deed of separation he is barred and estopped from maintaining this suit. This brings us to the examination of the second ground of defence.

What is the effect of the deed of separation, upon the rights of the appellant in the present suit?

By the Act of Assembly of 1841, chapter 262, and its supplements, now embodied in the Code, Article 16, section 24, *et seq.*, jurisdiction of all applications for divorce has been given to the Courts of Equity. Under that provision this suit has been instituted.

The Court in such case sits, not in the exercise of its general and ordinary equitable jurisdiction, but as a Divorce Court; and must be governed by the rules and principles established in the Ecclesiastical Courts in England, wherein a similar jurisdiction has been exercised, so far as they are consistent with the provisions of the Code. By the 14th section of Article 16, the Code expressly provides that all causes for alimony "are to be heard and determined, by Courts of Equity in this State, in as full and ample a manner as they could be heard and determined by the laws of England, in the Ecclesiastical Courts there."

In respect to the mode in which Courts of Equity shall exercise jurisdiction in divorce cases, and the principles by

which they are to be governed, the Code is silent. But from the nature of the jurisdiction itself, it has always been considered that the decisions of the English Ecclesiastical Courts, in similar cases, may properly be referred to as precedents; and they have uniformly been cited and relied on as safe and authoritative guides for the Courts of this State in disposing of cases of this kind.

If we refer to those precedents, it appears to have been long settled, that a voluntary deed of separation between husband and wife is not *per se* a bar to a suit in the Ecclesiastical Court for a restitution of marital rights or to a petition for divorce. *Durant vs. Durant,* 1 *Hagg.,* 733, (3 *English Ecc. R.,* 310); *Beeby vs. Beeby,* 1 *Hagg.,* 789, (3 *English Ecc. R.,* 338); *Westmeath vs. Westmeath,* 2 *Hagg. Supp.,* 1, (4 *English Ecc. R.,* 238); *Spering vs. Spering,* 3 *Swabey & Trist.,* 211; *Hunt vs. Hunt,* 32 *Law J. Rep.,* 168.

In 1 *Bishop, sec. 634, and note 3,* other cases are referred to in support of the general proposition above stated.

Some cases have arisen upon applications for divorce in the Ecclesiastical Courts, in which a voluntary deed of separation between the parties has been considered, in connection with lapse of time and other circumstances, as sufficient to show that the application was not made *bona fide,* for the cause assigned; but for some sinister or collateral purpose, and the application for that reason has been denied. Such were the cases of *Matthews vs. Matthews,* 1 *Swabey & Trist.,* 161, and *Williams vs. Williams,* 35 *Law J.,* 85, decided in 1866.

But, as we have said, such a voluntary deed has never been considered *per se* as a bar to the suit.

The cause for which the divorce in this case is claimed, as stated in the bill and established by the proof, is one which by the Ecclesiastical Law as well as by our Code, would when judicially established render the marriage null and void, *ab initio.* No case can be found in which an application for a sentence of nullity of marriage for such cause has

been held in the Ecclesiastical Court to be barred or defeated by reason of a voluntary deed of separation entered into between the parties; and in our opinion it would be alike unjust and against reason and public policy, as it is without precedent so to hold.

The case of *Brown vs. Brown,* 5 *Gill,* 249, has been cited as an authority to show that in this State, a voluntary deed of separation between the parties is a bar to an application for divorce.

We do not so interpret that decision. In that case the application was for a divorce *a vinculo;* the cause for the divorce charged in the bill, filed by the husband, was an abandonment by the wife, which was alleged to have taken place in the spring of 1836, and to have continued ever since. The bill was filed in July, 1846.

It appeared that in April, 1846, only a few months before the filing of the bill, the parties entered into a voluntary deed of separation, whereby they. agreed to live separate and apart from each other; certain property was secured to the wife for her support, all her rights to her husband's estate were relinquished, and he was secured from liability for her debts.

The Chancellor in his opinion, which was adopted by the Court of Appeals, after suggesting doubts whether upon a true construction of the Acts of Assembly, the case stated in the bill came within their provisions, placed his decision refusing the divorce, upon the effect of the deed, and the absence of any circumstance which had subsequently transpired, to render it necessary or proper that the relation of the parties as established by that instrument should be changed.

Now looking to the only ground upon which the divorce in that case was claimed, as being an alleged abandonment by the wife, it is very obvious that the deed operated as a condonation of the offence; or as an acquiescence in the separation on the part of the husband; which, so far affected his equitable rights to claim a divorce on that ground, as in

the absence of any fact or circumstance occurring after the execution of the deed to justify his application for a divorce, authorized the Court to infer that the application was not made *bona fide* for the cause alleged; and the divorce might properly be refused on grounds similar to those stated in *Matthews vs. Matthews* and *Hunt vs. Hunt,* above cited.

In the very recent case of *Parkinson vs. Parkinson,* reported in 1870, in *Law Rep., parts 5 and 6, (Cases in Probate and Divorce, page 25,)* which was a petition by the wife for a divorce, upon the ground of desertion or abandonment by the husband, the parties were married in July, 1861, and the alleged desertion took place in 1865. It appeared that the parties entered into a deed of separation in April, 1866. It was alleged in the petition and so appeared by the proof, that the husband, from the time of the alleged desertion, had been living in adultery.

At the hearing the Court decided that the wife had by the deed, " bargained away her right to relief on the ground of desertion ;" but "that she was entitled to a judicial separation on the ground of adultery if she applies for it."

The effect of that decision is that such a deed operates as a condonation of the offence of abandonment; and to that extent is consistent with the decision of the Court of Appeals in *Brown vs. Brown,* but is no bar to a suit for divorce for adultery, although it appeared that offence was known to the wife at the time the deed was executed. And, in this respect the case is an authority against the position contended for here by the appellee.

We think it is very clear upon the authorities, that the deed of separation in this case is not *per se* a bar to the maintenance of the present suit. There is no evidence in the case to impeach the good faith or *bona fides* of the appellant in bringing this suit. The only circumstance relied on by the appellee for that purpose, is the lapse of time after the execution of the deed, before filing the bill. But this is satisfactorily explained by the proof in the record. It

appears the complainant was restrained from instituting this proceeding by conscientious scruples, supposing it to be inconsistent with his religious duty, to seek a divorce for any cause; and it appears also, that the same motive led him to enter into the deed for an amicable separation.

Those conscientious scruples were afterwards removed by a decision upon the subject, rendered by the highest ecclesiastical tribunal of the Church of which he and the appellee are members, and to whose authority he felt himself bound to submit, declaring the marriage null. These facts disclosed in the record, while they in no otherwise affect the rights of the parties in this cause, are a sufficient answer to the suggestion, that the appellant has lost his remedy by *laches* or acquiescense, or that his application for a divorce has not been made in good faith and for the cause assigned. It has been argued on the part of the appellee, that although in the divorce Court, the deed may not operate *per se* as a bar or estoppel to the suit, yet that a Court of Equity would in the present case, upon a bill filed on behalf of the appellee for that purpose, issue an injunction to restrain the appellant from prosecuting a suit for divorce, as being contrary to the terms of the deed, and in violation of the covenants therein. And this proceeding, being in a Court of Equity, it has been argued that, for the reason stated the divorce ought to be denied.

In support of this position, we have been referred to the decision of the House of Lords in *Wilson vs. Wilson*, 1 *H. of L.*, 538, and 5 *H. of L.*, 40.

We have carefully examined that case, and are of opinion that it ought not to be accepted as a binding authority in support of the appellee's position here. It seems to us that the learned Court, when that case was first before them, went farther than was justified by antecedent decisions. There the deed of separation contained a covenant on the part of the husband *not to institute any suit in the Ecclesiastical Court for restitution of conjugal rights.* The Chancellor granted an in-

J. G. vs. H. G

junction restraining him from proceeding in the Ecclesiastical Court contrary to his covenaant, and on the first appeal the decree of the Chancellor was affirmed. It appears, however, when the cause went up to the House of Lords on the second appeal, grave doubts were expressed whether the Court had not gone too far; and while it was held that the former decision must be adhered to as the law of that case, it may be inferred from the opinions expressed by the learned Judges, among whom was Lord St. LEONARDS, that it was not to be considered as a precedent for a Court of Chancery to interfere by injunction for the enforcement of voluntary deeds of separation between married persons, any farther than to compel their observance, so far as rights of property may be concerned. To that extent Courts of Chancery will support and enforce the stipulations of such deeds, when they are made in good faith, and are equitable in their terms, but no farther. And in our judgment, it would be against public policy and contrary to the uniform current of decisions, to hold that the right of the appellant to relief in this case is barred or defeated by the deed of separation.

The decree of the Circuit Court will be reversed, and a decree will be signed divorcing the parties a *vinculo matrimonii*.

*Decree reversed and*
*decree divorcing the parties*
*a vinculo matrimonii.*