# JOHN T. BARCLAY *vs.* FLORENCE B. BARCLAY.

*When Agreemeut for Separation of Husband and Wife is a Bar to a Suit For Divorce on Ground of Abandonment—Liability of Husband for Wife's Maintenance.*

A voluntary agreement of separation between husband and wife provided for the payment of a certain sum of money monthly to the wife by a third party at the direction of the husband. The terms of the agreement were complied with and the parties lived apart for seven years when, upon the cessation of the payments to the wife, she filed the bill in this case asking for a divorce *a mensa* on the ground of desertion. *Held,* that the deed of separation followed by the living apart by mutual consent together with the lapse of time constitute a bar to the wife's demand for a divorce on the ground of desertion.

When a husband fails to contribute to his wife's support as provided for in a deed of separation, his liability for her maintenance is revived.

Appeal from a decree of divorce of the Circuit Court of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*James Fluegel,* for the appellant.

*W. Starr Gephart,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is a bill filed by the appellee against her husband, the appellant, for a divorce *a mensa et thoro* on the ground of desertion, and the appeal is from a decree of the Circuit Court of Baltimore City, granting the divorce, and awarding to the appellee by way of permanent alimony, a monthly allowance of $50.00 out of the husband's estate and earnings.

The parties were married in Baltimore City on May 9th, 1883, and lived together until January 8th, 1895, when it is alleged the appellant abandoned his wife, leaving in her care

and custody their only child, then a boy of eleven years. It appears from a certain petition in the case that an answer to the bill was filed by the appellant, but it is not embraced in the record. In his testimony given in the cause, he denies that he abandoned her, and alleges that she refused to live with him in a house of his own, or elsewhere than under her parents' roof, where they had always lived. She denies that she refused to live with him in a house of their own, or that she was ever requested by him so to do, and she alleges that he left her in consequence of a quarrel between them caused by his acknowledgment to her a few days before he left her, that he was keeping a woman in Baltimore, and his refusal to give her up. That he did originally and before the execution of the articles of separation hereafter mentioned abandon her, whatever may have been the cause, is beyond question from a letter written by him to her January 10th, 1895, in which he said, "I have made up my mind you and I cannot get along. I could never be happy if I lived with you, so don't try to have me do it, for I am determined to try and get along alone. Blame no one for this. I have done it all, and as for the lady I told you about, we are two; I will never go near her." It is proper to add however that in his testimony he emphatically denied that he ever told his wife he kept a woman, and that he never did keep the woman his wife named as such. They never met after the date of this letter, except casually on one occasion at his mother's house about six weeks thereafter, and on March 7th, 1895, the following articles of separation were executed between them :

Defendant's Exhibit No. 1.

(Filed with the Examiner.)

This agreement, made this seventh day of March, 1895, by and between John T. Barclay and Florence B. Barclay, his wife, of the city of Baltimore, Maryland.

Witnesseth that the parties hereto agree that they will live separate and apart from each other; that the said Florence shall not pledge the credit of said John T. Barclay in any manner or to any extent whatever, nor shall she contract any bills or obligations of any sort in his name; that said Florence shall have the custody of their son, Joseph T. Barclay and

shall provide for his maintenence and education out of the money hereinafter mentioned to be received by her; that once in every two weeks the said Florence shall upon request of said John T. Barclay, send said Joseph to the residence of Mrs. Isabel Barclay so that said John may see said Joseph for a reasonable time, said boy not, however, to be taken away from said residence by said John T. Barclay; that said John hereby authorizes and directs the Secretary of the Maryland Pilots' Association to retain, in each month out of any monies that may be coming to him, said Barclay, the sum of fifty-seven dollars to be paid to said Florence, or her agent, on the last day of each month hereafter beginning with the last day of March, 1895, said payments to continue until revoked by mutual consent of the parties hereto; that the certificate of membership of said John in the Royal Arcanum shall remain payable as at present, the certificates in the Ancient Order of United Workmen and the Loyal Additional Beneficial Association to be made payable to said Joseph T. Barclay and the dues and assessments upon all three of said certificates shall be paid by said Florence, to whom the notices shall be sent, out of the monies to be received by her as aforesaid and that the articles of furniture belonging to said John T. Barclay now on the premises No. 1528 N. Caroline street, shall be and become the property of said Florence, but she shall not part with any of said furniture except by mutual consent.

Florence B. Barclay.
John T. Barclay.

Witness as to both: James B. Guyton.

The appellee admits that these articles were prepared by her counsel, at her suggestion; that they were *first* signed by her, and were then sent to her husband through her counsel, and were then signed by him "all agreeing to this instead of taking it to Court," and that under this agreement she was regularly paid $57.00 per month from March, 1895, up to February, 1902. On March 6th, 1902, the appellant assigned to George S. Colton, for the use of Charles Scarf, his interest in all monies then due him from the Maryland Pilots' Association, and in his stock certificate of membership therein, until a note of $1500 due from him to said Scarf and dated December 10th, 1901, payable 60 days after date, should be fully paid, and since said assignment no payments have been made

to the appellee under the agreement, but that at the time the testimony of Colton was taken, $808.85 had been paid under said assignment and had been credited on the note.

Colton was made a party defendant to the cause and the bill prayed that the assignment be annulled, and that the appellant be enjoined from disposing of his interest as a member of the Maryland Pilots Association. A preliminary injunction was granted, and the decree dismissed the bill as to Colton, but it does not appear, either from the docket entries, or from anything in the record, that the injunction was ever expressly dissolved, or made permanent.

The question upon which the decision of this appeal must turn is the effect of the articles of separation upon the complainant's right to the divorce she seeks. In *J. G.* v. *H. G.*, 33 Md. 406, BARTOL, C. J., said that since in such cases the Court sits, not in the exercise of its general and ordinary equitable jurisdiction, but as a Divorce Court, and our Code is silent as to the principles by which it is to be governed, "it has always been considered that the decisions of the English Ecclesiastical Courts, in similar cases, may properly be referred to as precedents; and they have uniformly been cited and relied· on as safe and authoritative guides for the Courts of this State in disposing of cases of this kind." And in *Schwab* v. *Schwab*, 96 Md. 596, while holding that in mere "matters ot *procedure* in such cases we are at liberty to depart in so far from the *methods* formerly prevailing in those Courts which have now passed out of existence, as to make our *practice* conform to the weight of modern authority," this Court repeated the language of JUDGE BARTOL as to the authority of the *principles* established by the English decisions.

Turning then to these precedents, it may be regarded as settled by them that a voluntary deed of settlement is not, *per se*, a bar to a suit in the Ecclesiastical Court for a divorce. *Durant* v. *Durant*, 1 Hagg. 733; *Speering* v. *Speering*, 3 Swabey & Tristram, 211; *Matthews* v. *Matthews*, 1 Sw. & Tr. 499; *Crabbe* v. *Crabbe*, L. R., 1 P. & D. 601, and other authorities cited in 1 *Bishop on Marriage and Divorce*, sec. 634. It was

so held in this State in *J. G.* v. *H. G.*, *supra*, and in *Kremelberg* v. *Kremelberg*, 52 Md. 557.   But the English cases may be said to be very nearly uniform in also holding that a voluntary deed of separation between the parties, in connection with lapse of time, and other circumstances, may be sufficient to show that the application was not made *bona fide*, but for some collateral purpose, and in such cases the application has been denied.   Such was the case of *Matthews* v. *Matthews*, 1 Sw. & Tr. 499, where a deed of separation was made in 1853, reciting differences between the parties, and in 1859 the wife petitioned for a divorce on the ground of cruelty.   The lapse of time alone was held not to be an absolute bar, but taken in connection with the deed of separation was held to show that the application was not *bona fide* for the wife's protection, but for some collateral purpose, and the petition was dismissed. So in *Thomas* v. *Thomas*, 2 Sw. & Tr. 113, where husband and wife executed a deed of separation in 1854, setting forth that the husband had been living for some months with a Miss H. and referring to certain articles of agreement concerning trust moneys and other property, to which Miss H. and the husband and wife were all parties.   In 1860 the wife petitioned for a judicial separation on the ground of the husband's adultery with Miss H. in 1858 and 1859, and it was held that the execution of the deed of separation, knowing the husband was co-habiting with Miss H. was virtually a consent to its continuance, and that the petition must be dismissed.   In *Crabbe* v. *Crabbe*, L. R., 1 P. & D. 601, after a deed of separation with an allowance to the wife, she petitioned for a divorce on the ground of adultery and desertion.   Two quarters of the allowance had been paid, after which further payments were refused by the husband.   The Court dismissed the petition, saying, "The broad question is whether a woman who has quitted her husband's home under a bargain to do so, made by a deed of separation, can be said to have been deserted without cause by him.   This hardly bears stating, unless the consent of the complaining party is unimportant."  In *Parkinson* v. *Parkinson*, L. R., 2 P. & D. 25, which is ob-

served upon in *J. G.* v. *H. G.*, the wife had been deserted,
and two years later, a deed of separation had been made with
an allowance to her, but none had been paid.    She petitioned
for a divorce for desertion.    The Court said, "she had bar-
gained away her right to relief on the ground of desertion,"
but that there being proof of adultery, though known to her
at the time of making the deed, she was entitled to a judicial
separation on that ground if she applied for it.    This is the
only English case we have found which  holds that a deed of
separation  after knowledge of  adultery is  not a bar to a suit
for divorce.    The case of *Nott* v. *Nott*, L. R., 1 P. & D. 251
is discriminated, the petition being granted there because the
deed of separation had never been signed, and so the wife had
never agreed to the separation.

   In *Ross* v. *Ross*, L. R., 1 P. & D. 734; *St. Paul* v. *St. Paul*,
*Ibid.* 739, and in *Gipps* v. *Gipps*, 11 H. L. Cases, 27, it was
held that connivance at one act of adultery bars the plaintiff
from divorce whether with the same, or another paramour,
but we are not required to decide this question, because here,
as in *Parkinson* v. *Parkinson*, the bill is founded only on the
charge of desertion.    In 9 *Amer. and Eng. Ency. of Law*, 2nd
ed., p. 775, it is said, "A separation commenced or *continued*
by mutual consent or agreement does not constitute desertion,"
citing *Townsend* v. *Townsend*, 1 Sw. & Tr. 231; *Secor* v. *Secor*,
1 McArthur, 630; *Masterson* v. *Masterson*, Ky., 46 S. W. Rep.
20.    In the same work, p. 829, connivance is said to be "the
consent or  indifference of  the complainant to the misconduct
complained of as a cause of divorce.    This defense is in the
nature of an estoppel, and is generally set up as a defense to
adultery only, although the principle may be applicable to
other causes for divorce."    In *Morrison* v. *Morrison*, 3 Hagg.
105, LORD STOWELL says, "mere passive connivance is as
much a bar as active conspiracy," and in *Dennis* v. *Dennis*, 68
Conn. 194, the Court says, "Connivance may be the passive
permitting of the adultery or other misconduct, as well as the
active procuring of the commission.    If the mind consents
there is connivance."

In *Walton* v. *Walton*, 28 L. J. 97; *Thomas* v. *Thomas*, 2 Sw. & and Tr. 113; and *Ross* v. *Ross*, L. R., 1 P. & D. 734, it was held that consent to continued adultery is shown by articles of separation entered into after discovery of the offence; and as to desertion this was distinctly so held in *J. G.* v. *H. G.*, *supra*, whatever may be there intimated, or held, as to its application to adultery.

In *Yorston* v. *Yorston*, 32 N. J. Eq. 495, where the wife petitioned for a divorce after a deed of separation, on the ground of adultery known before the deed, the divorce was refused on the ground of acquiescence and connivance, citing, *Thomas* v. *Thomas*, and *Ross* v. *Ross*, *supra*, and *Hedden* v. *Hedden*, 21 N. J. Eq. 61.

The three leading cases in Maryland on this question are *Brown* v. *Brown*, 5 Gill, 249; *J. G.* v. *H. G.*, 33 Md. 401, and *Kremelberg* v. *Kremelberg*, 52 Md. 552. In *Brown* v. *Brown*, the Court of Appeals adopted the opinion of CHANCELLOR JOHNSON refusing the divorce, in which he held that where parties to a deed of separation placed themselves practically in the condition with respect to each other, which the law empowers the Court to do by a decree a *mensa et thoro*, as the parties in the present case have done, such decree is unnecessary and perhaps improper. In that opinion, the Chancellor said, "Having selected their own remedy by the execution of the deed, after the actual separation had lasted nearly two years, no sufficient reason has been assigned why within less than three months from the date of the deed, this Court should be called on to dissolve the marriage. It is not alleged or proved that any circumstances have transpired since the execution of the deed which render it necessary or proper that the relation of the parties as established by that instrument should be changed, and the Court would be most reluctant to do so, unless a case of strong urgency was made out."

In *J. G.* v. *H. G.*, that case was urged upon the Court and CHIEF JUSTICE BARTOL said, "The effect of the decision in *Parkinson* v. *Parkinson*, is that such a deed operates as a

condonation of the offence of abandonment, and to that extent is consistent with the decision of the Court of Appeals in *Brown* v. *Brown*," though he proceeded to say, "It is no bar to a suit for divorce for adultery, although it appeared the offence was known to the wife at the time the deed was executed." The case now before us asked for a decree *a mensa et thoro*, and is based exclusively upon abandonment. The case of *J. G.* v. *H. G.*, is therefore an authority for holding the deed of separation in this case a bar to the relief sought. In discussing the motives of the complainant in that case, the Court said, "The only circumstance relied on to impeach the good faith or *bona fides* of the appellant in bringing this suit is the lapse of time after the execution of the deed before filing this bill. But this is satisfactorily explained by the proof in the record. It appears the complainant was restrained from instituting this proceeding by conscientious scruples supposing it to be inconsistent with his religious duty to seek a divorce for any cause, and it appears also that the same motive led him to enter into the deed for an amicable separation. Those conscientious scruples were afterwards removed by a decision upon the subject rendered by the highest ecclesiastical tribunal of the church of which he and the appellee are members, and to whose authority he felt himself bound to submit, declaring the marriage *null.* These facts are a sufficient answer to the suggestion that the appellant has lost his remedy by *laches* or acquiescence, or that his application for a divorce has not been made in good faith or for the cause assigned."

So in *Kremelberg* v. *Kremelberg, supra*, JUDGE ROBINSON found a sufficient answer to the same suggestion, in the fact that the complainant was compelled either to submit to a construction, then for the first time, placed upon the deed of separation, which would utterly defeat what he had intended to accomplish thereby, and which instead of narrowing the control of the mother over the daughters, restricted his rights over them as a father, or to take some steps by which his rights as a father might be asserted. Both these cases there-

fore, are brought within the exceptions to the rule which we have stated. Here, however, there is no proof that the complainant was restrained by any conscientious scruples subsequently removed, or that she was influenced by any other motive than to get rid of the deed of separation to which she had agreed, merely because the payments for which it provided, were discontinued. The cases of *Crabbe* v. *Crabbe*, *supra*, where only two quarters of the allowance were paid, and then payment was discontinued, and *Parkinson* v. *Parkinson*, *supra*, where none of the allowance had been paid, show that this is a collateral purpose, which will not warrant a decree of divorce.

In *Besant* v. *Wood*, L. R. 12 Ch. Div. 605 (1878), a deed of separation between husband and wife was executed and after continuing to live apart for more than five years, the wife by counter claim to an action by the husband to enforce the deed, claimed against him a judicial separation, on the ground of alleged cruelty, but SIR GEORGE JESSEL held that her right was barred by lapse of time and by the execution of the deed of separation, and also that the husband was entitled to enforce specific performance of the contract. The latter holding we are not to be understood as approving it being in direct conflict with the case of *Helms* v. *Franciscus*, 2nd Bland, 561, in which CHANCELLOR BLAND says that Courts of law and equity are without any authority either to sanction or enforce cohabitation or separation, and that husband and wife cannot have any agreement between themselves for a separation, enforced by a Court of common law or equity. In the course of the opinion in *Wood* v. *Besant*, *supra*, the Master of the Rolls said that "The Courts had adopted the view that separation deeds were not *per se* against public policy, and that it might be better in many cases for married people to avoid the expense and scandal of suits for divorce by settling their differences quietly by the aid of friends out of Court, though the consequence might be that they would live separately." This we think is a sound view and consonant with the best interests of society, and it fol-

lows from what we have said that we are of opinion the decree of the Circuit Court should be reversed, and the parties be left in the situation in which their agreement of separation placed them.

We have not overlooked the fact that in this case the instrument is not technically a deed, and there is no intervention of a trustee for the wife, and that in *Lippy* v. *Masonheimer*, 9 Md. 316, the Court left open the question whether such an agreement has any validity even in a Court of equity; nor do we determine it, though it would seem the question would be presented in a very different light since the Act of 1898, ch. 457, and in the case last cited, SIR GEORGE JESSEL made some very pertinent observations upon the power of the wife to contract and the binding effect upon her of such an agreement.

But whatever may be the correct view of that subject, the appellee is not prejudiced in any right by the reversal of the degree. In *Brown* v. *Brown*, *supra*, it was said, "So long as the terms of a deed of separation are complied with by the husband, he is exonorated from the obligation to support his wife and is protected against any claim which can be made upon him for supplying her even with necessaries;" and it follows from this that when he repudiates his obligation under such deed, his liability for her maintenance is revived.

*Decree reversed and bill dismissed, costs to be paid by appellant.*

(Decided January 15th, 1904.)