## JOHN G. MELSON *v.* RONIE L. MELSON.

*Divorce for Desertion—Effect of Separation Agreement—Support of Child—Powers of Chancellor—Nature of Decree.*

An agreement between a husband and wife, although contemplating a permanent cessation of the marital relation in every respect, and securing all the actual benefits of a full divorce except the privilege of remarriage, was not *per se* a bar to a suit for divorce.                                        pp. 200, 201

Although the parties are living separate under articles of agreement, a subsequent cause, such as adultery, may entitle the injured party to a divorce.                          p. 201

After desertion of one spouse by the other has begun, the running of the statutory term of three years, required by Code, art. 16, sec. 38, as a ground for absolute divorce for desertion, is *prima facie* interrupted by the innocent spouse uniting, without fraud or duress, with the guilty spouse, in a contract for maintenance and for a cessation of conjugal rights, but this *prima facie* presumption of a common intent with respect to future separation is rebuttable by parol evidence of the surrounding circumstances, even where the contract contemplates the cessation of cohabitation.                                   pp. 202, 203

Where articles of separation and the accompanying circumstances show that, after a desertion by one spouse, but before the expiration of the necessary period of three years, both the husband and the wife agreed that they would live separate and apart from each other, and thereafter did so live apart by common consent, a statutory desertion for three years is not established.                                          p. 203

Evidence as to the circumstances under which, within three years after the husband's desertion of the wife, two separation agreements were entered into, and as to the wife's expectation that, as a result of these agreements, she would be permanently free from cohabitation with her husband, together with the

terms of the agreements and the wife's conduct after their execution, *held* to show a common consent to the separation so as to prevent the wife from securing an absolute divorce on the ground of desertion continued for the period of three years.

pp. 203-205

An agreement of separation *held* valid as the agreed equivalent of future maintenance by the husband of the wife, although it was invalid as a contract providing for the relinquishment of the right and duty of cohabitation. p. 205

There can be no allowance for alimony when there is no right to a divorce. p. 205

Articles of separation, when fully performed by the husband, bar the wife of any form of maintenance other than those agreed on in such articles, and counsel fees for the wife, if excluded by the terms thereof, should not be allowed. p. 205

A separation agreement between husband and wife is not effective to discharge either from the legal obligation to supply their child with the necessaries for its support and maintenance.

p. 206

Where a separation agreement named an inadequate amount to be paid monthly by the father to the mother for the support of their child, and his payments thereof were irregular and under pressure, *held* that a subsequent decree in a divorce proceeding, awarding custody of the child to the mother, should have charged the father with the support and maintenance of the child during her minority, and prescribed a reasonable amount to be paid by the father to the mother for that purpose, in the place and stead of his obligations under the agreement.

pp. 206, 207

Code, art. 16, sec. 39, authorizing the chancellor, in either decreeing or denying a divorce, to determine who shall be charged with the support and maintenance of the children of the marriage, in effect empowers the chancellor to determine what amount is to be paid by the party so charged to the party who has been given the guardianship and custody of the child or children. p. 207

The proof before the chancellor not being convincing as to what would be a reasonable amount to be charged against the

father for the necessary support and maintenance of the child, *held* that further testimony in this connection might be taken, if the chancellor should deem it advisable, or the parties so desire.                              p. 207

*Decided June 28th, 1926.*

Appeal from the Circuit Court for Wicomico County. (BAILEY, J.).

Bill by Ronie L. Melson against John G. Melson for divorce. From a decree for plaintiff, defendant appeals. Reversed in part.

The cause was argued before BOND, C. J., URNER, DIGGES, PARKE, and WALSH, JJ.

*F. W. C. Webb* and *Carroll E. Bounds,* with whom were *Woodcock & Webb,* and *Miles, Bailey & Miles,* on the brief, for the appellant.

*Arthur E. Williams,* with whom were *Williams & Williams* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

John G. Melson, the appellant, was married to Ronie L. Melson, the appellee, on March 4th, 1908, and they lived together in Salisbury until October 5th, 1921, when they permanently separated. On March 8th, 1923, the spouses entered into a separation agreement and a second agreement providing for the control, custody and support of their only child, Maude Virginia Melson, who was born on August 3rd, 1913. The bill in this cause was filed on December 26th, 1924, by the wife, alleging desertion as her ground for an absolute divorce, and setting up the non-performance by the husband of his contractual obligations, under the agreement of March 8th, 1923, to contribute to the support of the infant child, and also, the insufficiency of the amount the

husband had agreed to pay for the child's support. In addition to the absolute divorce asked, the relief prayed for included alimony for the support of the wife and maintenance for the daughter, and an allowance for counsel fees. The court passed a *nisi* order granting a counsel fee of fifty dollars. The husband resisted this order on the ground that the wife had covenanted in the articles of separation, which had been fully performed by the husband, that she would not "institute any action or civil process, or proceeding whatever, against the said husband for support, maintenance, alimony, or any other charge or liability whatsoever, except personal injury or wrongs." The court found this objection insufficient and passed a subsequent order allowing a counsel fee to complainant's solicitors of twenty-five dollars.

After the cause was at issue, testimony was taken by both parties and, on the submission for decree, the chancellor dissolved the marriage on the ground of desertion, granted the wife alimony in the sum of five hundred and twenty dollars payable quarterly, and awarded the custody and guardianship of the infant to the mother, and charged her with the maintenance of the child out of the alimony allowed. The appeal by the husband is from this decree. The testimony supported the charge that the husband had deserted the wife, and the principal question is if the nature of the separation had not been altered under all the circumstances into one of mutual consent, by the two contemporaneous agreements of the parties providing for the separation of the parties and for the custody and support of their infant child.

The two agreements mentioned were at once the outcome and the termination of a suit for a divorce *a mensa et thoro* begun by the wife against the husband on April 8th, 1922. The two contracts, while separately executed, were parts of one preceding agreement and were delivered on March 8th, 1923; and, pursuant to their prior undertaking, both parties signed, on March 9th, 1923, a joint order dismissing the then pending proceedings for divorce. At the date of the two agreements, the proof tended to show that the wife, who had the custody of the child, was without fault; and that a

few days more than seventeen months had passed since the husband had abandoned his wife and child. Under these circumstances, the two agreements to put their personal relations and property rights on a permanent basis, and to provide for the care and custody of the child, were consummated.

The deed of separation contained the recital that "differences have arisen between the said husband and wife in conseqence of which they have separated and there is no probability of them living together again at any time in the future, and whereas, with a view to said change in their relations they desire to enter into such an arrangement as to their personal and property rights as is hereinafter contained," and then, in consideration of the sum of one thousand and fifty dollars paid by the husband to the wife, followed the covenants of the spouses. These covenants provided, in effect, for a permanent separation, which gave to each full and complete personal liberty and independence, with the right to contract, to acquire, to hold, and to dispose of real and personal property as fully as if each were unmarried and with a full surrender and release (a) of any existing or future right of either in any present or future property of the other by reason of their marital relation, and (b) of any right of the wife to make demand or to institute any action whatever against the husband for support, alimony, or other liability, except personal injury or wrong. The other contemporaneous agreement set forth the fact that the parties had previously entered into a separation agreement of even date and desired to provide for the custody of their child, and then stipulated (a) that the mother should have the custody and control of the infant, who was then nine years old, with the privilege of the father to see the child under specified restrictions and to have the child live with him one week of every month during the period school would be closed during the summer vacation period, and (b) that the father should contribute the sum of ten dollars a month in money, food or wearing apparel towards the support and maintenance of the child until she became eighteen years of age.

While there was no express stipulation to that effect, the

agreements contemplated the permanent cessation of the marital relation in every respect; and, at a time when the innocent party was at most entitled to but a divorce *a mensa et thoro,* the spouses secured by contract all the actual benefits of a full divorce, except, necessarily, the privilege of marriage.   However, this deed of settlement is not *per se* a bar to a suit for divorce.   *Walker v. Walker,* 125 Md. 649, 660, 661; *Lemmert v. Lemmert,* 103 Md. 57; *Barclay v. Barclay,* 98 Md. 366; *Kremelberg v. Kremelberg,* 52 Md. 553, 557; *Helms v. Franciscus,* 2 Bland, 519, 558, 562, 565; *McCubbin v. Patterson,* 16 Md. 179; 2 *Schouler on Marriage etc.,* secs. 1304, 1306, 1309. Where there is a subsequent cause, as adultery, the injured party may obtain a divorce, although the parties were living separate under articles of agreement. 2 *Schouler on Marriage etc.,* sec. 1310.   And in *G. v. G.,* 39 Md. 401, impotency, which, under the statute, rendered the marriage voidable *ab initio,* and which was a cause accruing before the deed of separation, was held to be available as a sufficient, ground of divorce, when accompanied by proof of exceptional circumstances explaining and qualifying the natural inference to be drawn from the execution of the deed of separation, and establishing the good faith of the complaining party.   So, in *Kremelberg v. Kremelberg,* 52 Md. 553, by a greatly divided court, and under its unusual facts, adultery was held a sufficient ground for divorce *a vinculo matrimonii* at the instance of the wronged party, although articles of separation had been executed by the husband and wife after, and with knowledge of, the adultery.   And in *Lemmert v. Lemmert,* 103 Md. 57, this court there held "that if a wife abandons her husband without just cause and then files a bill for divorce *a mensa et thoro* and alimony, and in settlement of that they make such a contract as the one before us (although both before and after its execution the husband made a *bona fide* effort to have his wife return to him), the contract is not a bar to his suit for divorce on the ground of abandonment, and cannot properly be said to be an acquiescence by him in the separation, or a condonation of the offense."   At p. 64.

In the first two cited cases the causes for divorce were respectively impotency, which was a physical impediment to the consummation of marriage, and an adultery in which the injured spouse had not acquiesced. These two cases are instances of a class in which the marital offence, affording a ground for divorce, was complete before the articles of separation were executed, and so are to be distinguished from the third or last cited case of *Lemmert v. Lemmert, supra,* where the cause for an absolute divorce was not complete because, at the time of the agreement of separation, the desertion complained of had not continued for the requisite period of three years,' and because the agreement itself became an important factor in determining the continuity of the desertion for the necessary length of time.

The importance of the agreement of separation arises from its significance as an expression of the intent of the parties with respect to marital cohabitation. The marital offence under discussion is not complete unless there co-exist continuously throughout the period of three years the fact of separation and the intent to desert by the party deserting. *Muller v. Muller,* 125 Md. 72, 76. The statute specifically demands "that the party complained against has abandoned the party complaining, and that such abandonment has continued uninterruptedly for at least three years, and is deliberate and final, and the separation of the parties beyond any reasonable expectation of reconciliation." Code, art. 16, sec. 38. The law excludes the possibility of an abandonment beginning in a common consent, because a joint wrong would give no cause of complaint to either; and, as this abandonment, no matter how completely it fulfills its legal requisites at the outset, must retain its fundamental nature unimpaired throughout every portion of the requisite minimum period of three years, so if the separation of the spouses for any later portion of the three year period be attributable to the subsequent common consent of the couple, the prescribed statutory duration of desertion is not fulfilled. It follows that, after desertion has begun, the running of the statutory term of three years is, *prima facie,* interrupted by

the innocent spouse uniting, without fraud or duress, with the guilty spouse, in a contract for maintenance and for a cessation of conjugal rights. This *prima facie* presumption of a common intent with respect to future separation has been held by this Court to be rebuttable by parol evidence of the surrounding circumstances, even where the contract contemplates the cessation of cohabitation. In the cited case of *Lemmert v. Lemmert, supra,* the presumptive intent of the husband as disclosed by the deed of separation was controlled by parol evidence. In view of the wording of the contract, when considered with the associated facts and circumstances, and the *bona fide* effort, both before and after the articles of separation, of the innocent spouse to induce the guilty spouse to resume her conjugal relations, this court held in *Lemmert v. Lemmert, supra,* that the agreement was not made with the intent of the innocent party to consent to the continuation of the separation. 1 *Bishop on Marriage and Divorce,* secs. 1768-1770. But should the articles of separation and the accompanying circumstances show that, after a desertion by one spouse, but before the expiration of the necessary period of three years, both the husband and the wife agreed that they would live separate and apart from each other, and thereafter did so live apart by common consent, a statutory desertion for three years is not established. *Barclay v. Barclay,* 98 Md. 366, 370-374; *Brown v. Brown,* 5 Gill, 249; *Brown v. Brown,* 2 Md. Ch. 316; *Helms v. Franciscus,* 2 Bland, 545, 558, 562, 563; *Hubbard v. Hubbard,* 127 Md. 617, 620, 621; *Millar v. Millar,* 150 Md. 698; 1 *Bishop on Marriage and Divorce, secs.* 1690, 1700, 1767, 1768, 1770-1776; 2 *Schouler on Marriage, etc.,* secs. 1631, 1304, 1306, 1309.

On the record before us the proof is that the husband was guilty of desertion when he first left his wife. While her testimony is that, for almost four months after his departure, she kept his room ready for his return, there is no evidence of her having made any overtures to him for the restitution of their conjugal relation. In fact, the undisputed evidence is that the husband and the wife were both represented by counsel who, shortly after the separation, with a view to a

reconciliation, brought about a conference of the couple and their solicitors that continued for over three hours but without the desired effect. The counsel did not abandon their efforts, but could not bring about another meeting, and on April 8th, 1922, the wife instituted proceedings for a divorce *a mensa et thoro,* but failed in prosecuting the cause with diligence, so that, at the instance of the husband, she was laid under a rule to show cause why she should not proceed. This brought about the two agreements of March 8th, 1923, which, according to the preponderance of the evidence, were fully understood and fully agreed to, if indeed they were not suggested, by the wife, whose intent in their execution, and whose conclusion as to their effect on her future cohabitation with her husband, is summed up in her testimony, when she made the statement that she said, before signing: "Well, it is the most outrageous piece of business ever put before a woman to sign, but I thought I would rather have the one thousand dollars than have the man." This acquiescence by the wife in the ending of her marital rights was evident from the terms of the two agreements, which, by common consent, contemplated and provided for their future separation.

The deed of separation began with the declaration that differences had caused a separation and that there was "no probability of them living together at any time in the future, and whereas, with a view to said change in their relations they desire to enter into such an arrangement as to their personal and property rights" as was found in the articles, which were specifically designed to make the status of each with respect to individual liberty and to property and marital rights throughout life and after death, as though each were unmarried. And this clear intention and agreement was complemented by a contract relative to the custody of their infant, which was unmistakably based upon the permanency of their agreed status, and upon the husband and wife continuing to live apart in their respective homes. After the execution of this separation agreement, the husband paid to the wife the sum named as the consideration, and he has fully performed all his other obligations under this particular con-

tract. Since its execution, neither the husband nor the wife has made any attempt to renew cohabitation. Although the agreement was made on March 8th, 1923, the wife never sought to end their separation between that date and the filing of her bill for divorce on December 26th, 1924, which was but two months and twenty-one days over the three years since their separation. Although both lived in the same community, she never sought a reconciliation, nor did she ever indicate to him any desire to revoke their agreement of separation; and she did not bring her bill of complaint for divorce until the husband was in arrears on account of the payments stipulated for the support of the infant daughter. *Walker v. Walker,* 125 Md. 649, 659; *Hague v. Hague,* 85 N. J. Eq. 537.

These circumstances and the agreements mentioned distinguished the present case from that of *Lemmert v. Lemmert, supra,* and make the separation of the parties after the agreement the result of a common consent, and the decree should not have granted an absolute divorce to the wife, as desertion for three years was not proved as contemplated by the statute. *Barclay v. Barclay,* 96 Md. 366.

2. The agreement of separation was valid as the agreed equivalent of future maintenance by the husband of the wife, although it was invalid as a contract providing for the relinquishment of the right and duty of cohabitation of the spouses. *Supra,* and 1 *Bishop on Marriage and Divorce,* sec. 1312. On the twofold ground (a) that there can be no allowance for alimony when there is no right to a divorce and (b) that articles of separation, when fully performed by the husband, bar her from any other form of maintenance than those agreed in the articles, the chancellor was in error in allowing the wife alimony. Nor should counsel fees for the wife have been allowed, as they were excluded by the terms of the contract. *McCubbin v. Patterson,* 16 Md. 179; *Barclay v. Barclay,* 98 Md. 366, 375; *Walker v. Walker,* 125 Md. 649, 658-661; *Brown v. Brown,* 5 Gill 249; *Hood v. Hood,* 138 Md. 355, 359-366.

· ' 3.   The care and custody of the only child of the parties was a part of the relief prayed by the bill of complaint, and, although a divorce must be denied, the chancellor was granted power, by section 39 of article 16 of the Code, to order and direct who shall have the guardianship and custody of the child and be charged with her support and maintenance, subject to the right at any time thereafter to annul, vary or modify such order.   The decree of the chancellor awarding the custody and guardianship of the infant to the mother was in conformity with the agreement of the parties, and was in furtherance of the best interest of the child.

The decree, however, cast upon the mother the entire burden of the support and maintenance of the child out of the annual alimony of five hundred and twenty dollars previously awarded her by the decree.   The sum of ten dollars a month stipulated in the second agreement to be paid by the father to the mother for the support of the daughter is plainly inadequate, and it was held in *Boggs v. Boggs,* 138 Md. 422, that such an agreement, when approached with reference to the welfare of the child, would not be effective to discharge either parent of the legal obligation to supply the child with the necessaries for its support and maintenance.   The amount was not only inadequate, but the proof on this record is that the father had made his payments irregularly and under pressure, and we do not believe she should be remitted to an action at law to recover whatever amounts the father might be liable to her for, on account of his primary liability for necessaries furnished the child by the mother beyond any amount which she should have herself contributed.   The interests of the child are, in this connection, the first and controlling consideration, and equity can best secure her protection and rights.   Under all the circumstances, and the relative rights, obligations and resources of the parties, the father should have been charged by the decree with the support and maintenance of the child during her minority; and a reasonable amount should have been prescribed by the decree to be so paid by the father to the mother for that purpose, in the place and stead of his obligations under the contract,

accruing due after the date of the decree and before his death, and subject to the chancellor's further action. *Schouler on Marriage etc.,* (6th Ed.), secs. 796, 1917, 1916. It was argued that, while the statute does empower the chancellor to determine who shall be charged with the support and maintenance of the child, yet the statute does not in terms authorize the chancellor to determine what amount is to be paid by the party so charged to the party who has been given the guardianship and custody. The precise point has never been expressly adjudicated by this Court, although in *Barnett v. Barnett,* 144 Md. 184, 188, the decree directed that the father pay the mother "the further and additional sum of one thousand dollars ($1,000.00) per annum for the support, maintenance and education of their said infant son" and, in affirming the decree, the Court said: "Nor, considering the station in life of the parties to the cause, and the wealth of the appellant and the resources of the appellee, do we consider the allowance made for her support and that of her child so unreasonable as to warrant us in disturbing it, and in view of his age the action of the lower court in awarding the custody of the child to Mrs. Barnett was unquestionably proper." p. 203. In view of this decision, and the natural implication that the power to charge a party with support and maintenance would embrace as a corollary the power to limit and make certain the extent of that charge, it would seem clear the fixing the amount of the charge is within the purport of the statute.

The proof before the chancellor was not convincing as to what would be a reasonable amount to be charged against the father for the necessary support and maintenance of the child, in view of her station in life, the property and the earning capacity of the father and of the mother, and all the other attendant circumstances; and further testimony in this connection may be taken, if the chancellor should deem it advisable or the parties so desire.

For the reasons stated, there was error in allowing to the wife a counsel fee of twenty-five dollars, and in granting the appellee a divorce and alimony, and in charging her with

the support and maintenance of the infant daughter, but there was no error in committing her to the guardianship of the mother. The decree will therefore be affirmed to the extent of awarding the guardianship and custody of the daughter and of imposing the costs prior to the appeal upon the appellant, but otherwise it will be reversed.

> *Decree reversed in part and affirmed in part, with costs of this appeal to the appellant, and cause remanded for further proceedings and decree in conformity with this opinion.*