## AUGUST LEMMERT *vs.* BARBARA M. EMMERT.

*When Deed of Separation a Bar to Bill for Divorce—Cause for Abandonment—Appeal—Oral Testimony in Equity—Evidence.*

A contract or deed between husband and wife providing for their separation is not in itself a bar to a subsequent suit by one of them for divorce, although it may in some cases be regarded as an acquiescence in the abandonment and hence a bar to a bill for a divorce for that cause.

A wife left her husband without just cause and a year afterwards filed a bill asking for a divorce *a mensa* and alimony. The husband endeavored in good faith to induce her to return to him, but she refused to do so. Then they executed a contract by which he agreed to pay her a certain sum of money and she agreed to release him from all claims. The money was paid and the bill for divorce dismissed. The contract did not expressly provide for their living apart, but it was made in contemplation of their separation. *Held*, that since the separation was not by mutual consent, or with the husband's acquiescence, this contract, made in settlement of the wife's suit, is not a bar to a bill by the husband for divorce on the ground of abandonment.

That a husband speaks harshly and abusively to his wife on account of her having become a "Doweite," *i. e.*, the adherent of a new-fangled religion, is not a justification of her abandonment of him.

When testimony is taken orally before the Court in an equity cause under Code, Art. 16, sec. 243, the rulings of the Court as to the admissibility of evidence cannot be reviewed on appeal, when there is nothing in the record to show what the rulings were except a notation of the stenographer that the question was objected to, ruled inadmissible and exception noted. The correct practice in such case is either to file written exceptions, as is done when the evidence is taken before an examiner, or the rulings should be presented by a bill of exceptions or certificate of the Judge.

Evidence to show the intention of the parties in executing a deed of separation is not admissible, but evidence is admissible to show the circumstances surrounding its execution, such as the pendency of divorce proceedings, and the fact that the parties were then separated.

Appeal from the Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*George Forbes*, for the appellant.

No appearance for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellant filed a bill for divorce *a vinculo matrimonii* against the appellee, on the ground of abandonment. The defendant answered denying that she had abandoned and deserted him without cause, and alleged that on April 13th, 1900, "after cursing, abusing and beating her, he ordered her to leave the house and finally drove her out." Testimony was taken orally before the Court and an order was passed dismissing "the original bill of complaint and cross bill of complaint," from which the appellant took this appeal. We do not find the cross bill in the record, but in the answer the defendant set up the defenses above stated, as well as others, to the plaintiff's bill. A paper was produced in evidence called a "Contract and Deed," and it was stated by plaintiff's solicitor that the bill was dismissed on the ground that that paper was an agreement of separation and as such barred this suit. There was no appearance in this Court for the appellee and the case was disposed of below at the conclusion of the plaintiff's evidence.

The testimony shows that the differences between the appellant and the appellee were the result of the latter's being a "follower of Dowie." Both were members of the Lutheran Church, were teachers in the Sunday School, and seemed to have lived happily until Mrs. Lemmert became what is called in the record a "Dowieite." On April 12th, 1900, a "Dowie" preacher came to their house and, according to plaintiff's testimony, told his wife that she need not obey her husband, who was objecting to her going to the "Dowie" meetings. He called a policeman to put the preacher out of the house, and the appellant and his wife then had a quarrel. He admits cursing her—told her it was a wonder he "did not knock her d—d head off," but denied striking her then or upon any other accasion. One witness testified that she said in his

presence that he had thrown her against a sewing machine and that he did not deny it. The next day she left the house, in his absence, and went to her brother's. The appellant went to see her and asked her to come home, but she refused and said her brother had offered her a home and she was going to stay there. She sent for some things she had at her husband's house and subsequently went to Philadelphia. In the Spring of 1901 she returned to Baltimore and on May 21st instituted a suit for a divorce *a mensa et thoro.* He went to see her the next day—said he put his arm around her, kissed her and asked her to return home, but she refused—that in answer to his inquiry as to what she wanted, she demanded one hundred dollars, and he gave her two hundred dollars, and the paper above spoken of was executed. He paid the cost of the suit against him, which was then dismissed.

This brings us to the consideration of that paper, which is dated May 24th, 1901. It does not in terms agree that the parties should live apart, although it does undoubtedly imply that they expected to so live. After reciting their marriage and that they had lived together until the 13th of April, 1900, it proceeds: "Whereas owing to certain disagreements it is impossible for the said parties hereto to live together in peace and happiness, and whereas the said August Lemmert, considering the condition in life and the health of the said Barbara M. Lemmert, and of her ability to support herself, has agreed to pay her the sum of two hundred dollars in full payment, release and satisfaction of all claims and demands of all kind and nature which she has against him or may have for support and maintenance, or against his property, real personal and mixed, which he now owns or may hereafter acquire," etc. She then in consideration of that sum of money paid her, the receipt of which she acknowledged, released him and his property from all such claims, and assigned and conveyed and agreed, at any future time, to make other assignments and conveyances to John R. Lemmert, trustee, of all her right, title, interest and claim of all kind and nature which she had against August Lemmert, by virtue of said marriage,

or against his property.   The contract cannot be read without reaching the conclusion that they did contemplate living apart for they would not have considered *"her ability to support herself,"* or provided for a release of all the wife's claim upon her husband and his property, which he *then owned or thereafter acquired,* if they expected to live together.   Such expressions taken in connection with that quoted above, in which they said it was impossible to live together in peace and happiness, do not seem to admit of any other conclusion.

But it does not follow from the language used in the contract, when considered in connection with the surrounding circumstances, that the separation was by *mutual consent.* The proof is that the wife had left the husband more than a year before, and she had filed a bill for a divorce *a mensa et thoro* and asking for alimony, just three days before the contract was signed.   When he went to see her on May 22nd, 1901, the day after the divorce proceedings were begun, he treated her affectionately and tried to persude her to return to his home, but she declined.   It may be that she was wise in so doing for she was apparently infatuated with the "Dowie" religion, and he was violently opposed to it at that time, and she may therefore have thought they never could live happily together.   But however that may be, the appellant was confronted with the choice of having the litigation go on, and paying such alimony and costs as the Court required of him, or making a settlement with his wife.   She was willing to accept a hundred dollars but he said he wanted to do what was right, and gave her one-half of what he was worth and paid all expenses of the suit, including her attorney's fee. Even after they had signed the papers, as they walked along the street together, he said to his wife "come home to me and give all this up and live with me, and she said she could not do it and she went to where she was boarding, and I went home." He was corroborated by several witnesses as to his asking his wife to return, although one of them said his wife told her that he used a very harsh expression towards her at the time and she did not think he was in earnest.   He certainly made great

efforts to avoid trouble with his wife on account of her infatu-
ation for the "Dowie" religion, if his testimony is true.
When she was in Philadelphia he went there, studied the sub-
ject for a month, and said he agreed to some things but
others he could not agree to.    Some of the mutual friends of
his wife and himself studied the subject with them.    He con-
cluded his reference to that by saying: "When they said if a
man had a finger cut off that these men praying for them he
would get a new finger, I could not go those kind of things.
That is when the trouble began."    He was even baptized, by
immersion, in order to conform as far as he could to the re-
quirements of that religion, and, although differences in relig-
ious views ought   not to   separate husband   and   wife,
if it be true that the teachings of the "Dowie" Elders and fol-
lowers were such as the appellant testified to, it is at least not
a cause for censure if he was unable or refused to accept them.
The facts to which we have referred, as well as others in  the
record, certainly tend to show that the appellant's wife did not
leave him with his consent, and that  he did not drive her out of
the house as alleged in the answer, and under the circum-
stances it would not be just to infer that the separation (which
we have  said was apparently contemplated  by the terms of
this contract) was by their mutual consent, or to hold  that it
of itself precludes him from suing  for  divorce  for abandon-
ment.

In *Barclay v. Barclay*, 98 Md. 366, we held that the deed
of separation, followed by the living apart by mutual consent,
together with the lapse of time, was a bar to that suit for a di-
vorce *a mensa et thoro*.    But there the husband abandoned his
wife in January, 1895, and on March 7th of that year they ex-
ecuted the deed of separation in which they expressly agreed
that they would live separate and apart from each other, pro-
vided for the custody of their child and for an allowance of
fifty-seven dollars a month to the wife.    That allowance was
paid for seven years, and upon failure to continue it the wife
filed a bill for a divorce *a mensa*, on the 14th of March, 1902.
Many authorities were cited in that case, and JUDGE PEARCE

in delivering the opinion said: "Turning then to these prece-
dents, it may be regarded as settled by them that a voluntary
deed of settlement is not, *per se*, a bar to a suit in the ecclesi-
astical Court for a divorce   *   *   *   It was so held in this
State in *J. G.* v. *H. G.*, *supra*, and in *Kremelberg* v. *Kremel-
berg*, 52 Md. 557.   But the English cases may be said to be
very nearly uniform in also holding that a voluntary deed of
separation between the parties in connection with lapse of time,
and other circumstances may be sufficient to show that the
application was not made *bona fide*, but for some collateral
purpose, and in such cases the application has been denied."
After referriug to a number of English cases and other au-
thorities outside of this State, he considered at some length
*Brown* v. *Brown*, 5 Gill, 249; *J. G.* v. *H. G.*, 33 Md. 401,
and *Kremelberg* v. *Kremelberg*, *supra*—the last two particu-
larly, as to what would excuse delay in proceeding in order
to avoid the suggestion of bad faith and added: "Both these
cases, therefore, are brought within the exceptions to the rule
which we have stated.   Here, however, there is no proof that
the complainant was restrained by any conscientious scruples
subsequently removed, or that she was influenced by any other
motive than to get rid of the deed of separation to which she
had agreed, merely because the payments for which it pro-
vided were discontinued."   It will thus be seen that that case
differs materially from this in several respects.   In the first
place the parties *mutually agreed* that they would live sep-
arate and apart from each other, which, unless explained in
some way, operates as a condonation of the offense of aband-
onment.   Then they acted under the deed of separation for
seven years, and it was not until the wife failed to get the
allowance that she complained of the abandonment, and, being
for a divorce *a mensa*, the case might well have been put on
the ground stated in *Brown* v. *Brown*, that such a decree "is
rendered unnecessary, and would perhaps be improper in this
case, in consequence of the deed of separation, by which the
parties have placed themselves very much in the condition
with respect to each other which the law would have empow-
ered the Court to do, by decreeing a limited divorce."

In *Brown* v. *Brown*, the deed of separation contained an express agreement that the parties "shall and will henceforth during their joint lives live separate and apart," and was executed more than ten years after they had separated. The bill for divorce was filed within three months after the deed of separation was made, and the Court said that nothing had transpired since the execution of the deed which rendered it necessary or proper that the relations of the parties as established by that instrument should be changed. In *J. G.* v. *H. G.*, the Court said the deed in *Brown* v. *Brown* "operated as a condonation of the offense; or as an acquiescence in the separation on the part of the husband; which so far affected his equitable rights to claim a divorce on that ground, as in the absence of any fact or circumstance occurring after the execution of the deed to justify his application for a divorce, authorized the Court to infer that the application was not made *bona fide* for the cause alleged." But in *J. G.* v. *H. G.*, *Kremelberg* v. *Kremelberg*, and *Barclay* v. *Barclay*, this Court distinctly announced, as the law of this State, that a deed of separation was not *per se* a bar to a suit for divorce, although it may in some cases be regarded as an acquiescence in the abandonment and hence bar such suit for that cause. But in this case we have seen that the facts were such that it cannot be said that the appellant gave his consent to his wife's abandonment of him, but she had left him, was demanding alimony and the contract was executed in settlement of that case. No case that we are aware of has held a deed or contract of this character to be a bar under such circumstances as these.

In *Stoffer* v. *Stoffer*, 50 Mich. 491, a wife left her husband with the avowed purpose never to live with him again. She demanded of him five hundred dollars, which he gave her aud she gave him a release for his property. The separation took place more than three years before the bill was filed. The Court said: "If the separation had been by voluntary arrangement, the living apart in pursuance of it could not be ·called desertion. But in this case it appears that the separation was forced upon plaintiff against his desire. The pro-

vision he then made for his wife was made in pursuance of peremptory demands, and probably to avoid litigation; and we are inclined to hold it should not preclude the redress he seeks." In *Niehols* v. *Nichols*, 11 S. W. Rep. 286, the Court of Appeals of Kentucky held that a written agreement between the parties reciting a separation and making provisions for their children, property rights and alimony, did not justify an inference that there was a separation by mutual consent. See also *Ogilvie* v. *Ogilvie*, 37 Oregon, 171; *Henderson* v. *Henderson*, *Ibid*, 141 (S. C. 48 L. R. A. 766); *Cook* v. *Cook*, 3 Swabey and Tristram, 515.

These cases sustain the view that we have indicated above is the correct one—that if a wife abandons her husband without just cause and then files a bill for divorce *a mensa et thoro* and alimony, and in settlement of that they make such a contract as the one before us (although both before and after its execution the husband made a *bona fide* effort to have his wife return to him) the contract is not a bar to his suit for divorce on the ground of abandonment, and cannot properly be said to be an acquiesence by him in the separation, or a condonation of the offense.

The record does not show such facts as justified the appellee in leaving her husband in April, 1900. His conduct on April 12th "cannot be justified in morals or in law," as was said by BARTOL, C. J., in *Hoshall* v. *Hoshall*, 51 Md. 72, but as was also decided in that case the single act of violence did not constitute cruelty of treatment within the meaning of the law. He testified positively that he did not strike his wife on that occasion, and he seems to have repented of his harsh language and threats immediately, as he at once sent a mutual friend to his wife, who was then at his house, and the next day he went to see her at her brother's, where she had gone, and endeavored to persuade her to return to his home. We do not find sufficient in the record to justify her abandoning her husband, or to preclude him from obtaining a divorce, but as no testimony was taken on the part of the defendant, and as we are informed the decree was based on the contract

and deed of May 24th, 1901, it may be that the defendant
will desire to take testimony. The Court below can grant her
that privilege if it deems it proper, but the evidence in the
record will entitle him to a divorce unless such new testimony
shows that the appellee was justified in leaving her husband
or such facts as disentitle him to that relief.

The solicitor for the appellant complains of the lower Court
not permitting him to introduce evidence to show the intent
of the parties in executing the deed and contract. We are of
opinion that the rulings on the admissibility of such evidence
are not properly before us. The testimony was taken under
sec. 243 of Art. 16, of the Code of 1904, and there is noth-
ing to show what the rulings of the Court were, except-
ing notations in the record that "the question was ob-
jected to, ruled inadmissible, and exception noted to the
ruling," or something of that character. Section 243 pro-
vides that "the evidence so taken shall be written down as de-
livered by the witnesses by such persons and in such manner
as the Court may have by special order or general rule di-
rected, and when so written down shall  *  *  *  be filed
as part of the proceedings, to be used as if taken before an
examiner; or if the Court shall have so ordered, such evidence
shall be reduced to writing by counsel in the same manner as
bills of exception now are at common law, and after the same
shall have been signed by the Judge or Judges before whom
the testimony was taken shall  *  *  *  be filed as part of the
proceedings, to be used as if taken before an examiner." We
find no special order, excepting that the testimony be taken as
required by the Thirty-Fifth Rule of the Court, but there is
no rule of Court on the subject in the record. If a party de-
sires to have this Court review the rulings of the lower Court,
when testimony is taken orally under this statute, the correct
practice is either to file written exceptions, as is done when the
evidence is taken before an examiner, or the rulings should
be presented by a bill of exceptions or certificate of the Judge.
The latter course would seem to be the proper one when the
complaint is that evidence was improperly rejected, but it is

clear that there should be some more formal method of bring-
ing the rulings of the lower Court before us for review than
by simply having the notations of the stenographer. They
may not be correct, as he may have misunderstood the
points raised or the rulings made. This record does not even
show who took the evidence, or whether it is properly re-
ported or the rulings of the Court correctly stated.

As the question may come up, if further testimony is
allowed, we will simply add that in our opinion evidence of
the character said to have been rejected by the Court below
should not be permitted to explain the intent of the parties in
signing the contract, as the paper speaks for itself. But the
circumstances surrounding its execution, such as the pendency
of the divorce proceedings, the fact that the parties were then
separated, etc., are admissible, and were admitted by the Court
below.

It follows that the decree dismissing the bill of complaint
must be reversed, and the cause remanded for further pro-
ceedings in accordance with this opinion.

> *Decree reversed and cause remanded
> for further proceedings in accord-
> ance with this opinion—the costs in
> this Court to be paid by the appellee
> and those below to abide the final
> result of the cause.*