## LAUREL REALTY CO. *v.* HIMELFARB ET UX.

[No. 17, October Term, 1948.]

*Decided November 11, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Albert F. Wheltle* and *Hilary W. Gans* for the appellant.

*Morris Rosenberg*, with whom was *Henry M. Decker, Jr.*, on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from an order overruling a demurrer to a bill for specific performance filed in the Circuit Court

of Baltimore City. The demurrer is to eight separate paragraphs of the bill, and also to the whole bill. We have heretofore permitted immediate appeals in equity cases from orders overruling demurrers to entire bills, (*Young v. Cockman*, 182 Md. 246, pages 248 and 249, 34 A. 2d 428, 149 A. L. R. 1006), but that exception does not extend to appeals from orders overruling demurrers to individual paragraphs in a bill. An order overruling such demurrers is interlocutory, and the ruling is reviewable by this court only on an appeal after final decree. In the present case, therefore, we consider only that part of the demurrer which is to the whole bill.

The allegations of the bill are that on December 5, 1945, the appellant had acquired from the Bureau of Buildings of the City of Baltimore, permits for the construction and erection of 24 semi-detached houses on lots in Sunset Road and Cylburn Avenue in Belvedere Park, one of which houses was known as 5005 Sunset Road. With the applications upon which these permits were obtained were filed plans and specifications showing how these houses were to be built. On January 29, 1946, the appellant applied to the Federal Housing Administration for a priority rating for scarce materials, and received such rating in consideration of its agreement to sell the houses and lots at a price not exceeding the ceiling price established by the Federal Housing Administration, and to give veterans of World War II, preferential rights of purchase. The appellee, Harry Himelfarb, is such a veteran. In April or May, 1946, the appellee, Harry Himelfarb, visited the development of the appellant, was shown partly completed houses by the president of appellant, and was told by the latter that all houses, including the house to be known as 5005 Sunset Road, were being constructed and erected and would be constructed and erected in accordance with the plans and specifications on file with the Bureau of Buildings. Also that the house, No. 5005 Sunset Road, would be constructed and erected with wooden sub-flooring such as that already installed in 5023 Sunset Road, in accordance with said

plans and specifications. In reliance upon these representations, the appellees agreed to purchase the lot and the house which was to be completed thereon and to be known as 5005 Sunset Road, subject to an annual ground rent of $120, for the sum of $8500 which the president of appellant reported was the price for the completed house and lot established by the F.H.A., and it was agreed in consideration of the purchase price that the house, which was then in the course of construction and erection, would continue to be constructed and erected in accordance with the plans and specifications filed with the Bureau of Buildings. The agreement between the parties was evidenced by a written contract filed with the bill. The complainants made a down payment of $1000 on the purchase price and on the sixth of November, 1946, paid in full for the lot and house and received an assignment of the leasehold estate from a holding company used by appellant for this purpose. This assignment was duly recorded, and is filed with the bill. The appellees also allege that prior to and at the time of said settlement and payment in full for the house, they had had no opportunity to inspect the house because the president of appellant, acting for appellant, refused to open the house for inspection, representing that the house was completed as agreed upon. After moving in and residing in the house the appellees found that it was not constructed and erected in accordance with the plans and specifications, many items having been omitted entirely, other items erected and installed in a defective manner, and inferior grades of materials substituted for those called for. There are listed in paragraphs a. to p., both inclusive, of the bill, the defects, omissions and substitutions. The appellees also allege that they were overcharged $50 in violation of the maximum ceiling price, and that they have seasonably and repeatedly requested appellant to correct and remedy the conditions in the house, but such requests have been ignored. Photostatic copies of the plans and specifications are filed as exhibits with the bill. The appellees further state that they have suffered dam-

age and inconvenience, that they have no adequate remedy at law, and they ask that the appellant be decreed to perform specifically the contract for the completion of the house, or if this is now impossible or impractical, that they be awarded monetary damages for the failure to perform, and also for the overcharge and for the loss and inconvenience caused them by the breach of contract.

The contract is on a standard form of contract of sale of real property approved by the Real Estate Board of Baltimore, and provides for the price of $8500 subject to the ground rent "of which One Thousand ($1000.00) Dollars have been paid prior to the signing hereof, and the balance to be paid as follows: Cash at time of settlement, upon completion." There is a clause in the contract that it is thoroughly understood by the buyer that the seller is unable to give any date of completion, and there is also a clause that the contract contains the final and entire agreement between the parties and neither they nor their agents shall be bound by any terms, conditions or representations not therein written.

The demurrer to the whole bill is upon eight grounds of which, however, only three are pressed. These, as stated in appellant's brief, are

"I. The written contract is stated to be and is a complete integration which cannot be supplemented or contradicted by alleged parol evidence.

II. The contract of sale is an indivisible contract, at least part of which is required to be in writing by Section IV of the Statute of Frauds and, therefore, no part of said contract is enforceable which is not reduced to writing.

III. Any such alleged oral understandings were merged in the deed."

As a general rule a court of equity will not specifically enforce a building contract, but there are well established exceptions to that rule. One of these is where a complainant has purchased an unfinished house, taking title when it is in that condition, but the work has never been completed. That was the situation in the case of *Brum-*

*mel v. Clifton Realty Company,* 146 Md. 56, 125 A. 905, 909. In that case the court examined and quoted from a number of text-writers and English, New York and New Jersey cases, and stated as a conclusion "From an examination of these and other cases, this at least seems to be clear that in this state, a court of equity may compel the vendee to specifically perform such a contract as that involved in this case, where the work remaining to be done under it is clearly defined, and where the complainant had no adequate remedy at law. It is also clear that the work to be done under the written contract filed in this case is sufficiently defined. But while that is true, it is equally true that there is no allegation in the pleadings to show that the complainant has no adequate remedy at law, but in view of section 231, art. 16, Code Pub. Gen. Laws of Maryland, as construed in *Neal v. Parker,* 98 Md. [254], 269, 57 A. 213, that cannot be regarded as a fatal omission." Article 16, Section 231 referred to in this quotation is now Article 16, Section 255. It provides that no court shall refuse to specifically enforce a contract on the mere ground that the party seeking its enforcement has an adequate remedy in damages, unless defendant shows to the court's satisfaction that he has property from which the damages may be made or gives bond. This section is similar to Article 16, Section 92, which refers to the issuance of a mandamus or an injunction. In construing the last mentioned section we said "The statute was not intended to be applicable on demurrer, but only after such hearing as might make it appear to the court that the defendants, in a given case, could respond to damages, or could give a bond, and that such relief would be adequate." *Universal Realty Corporation v. Felser,* 179 Md. 635, 22 A. 2d 448, 451. The same construction is applicable to Section 255.

The first contention of the appellant is that the written contract is complete, and that it cannot be supplemented by parol evidence. This contention cannot be sustained where the contract itself states that the settlement is to be made "upon completion", and is silent how the build-

ing is to be completed. The contract cannot mean that the parties did not agree what was to be built upon the lot. So far as it shows, what was to be put there might have been a house, a store, or a garage. In such a situation, parties are clearly entitled to show, and the appellees offer to show, what was agreed to be completed. What this was, is stated very definitely in the bill. The written contract on its face clearly did not contain all the agreements made by the parties. In the case of *Applestein v. Royal Realty Corporation,* 181 Md. 171, 28 A. 2d 830, 831, where the question was whether proof of a usage or a custom was admissible to explain something in a contract, we said "The true test is that there must be in the contract something doubtful which can be explained by a usage or custom. If the contract is plain, evidence cannot be received to contradict it. If the contract is made with reference to a usage and therefore omits the special particulars which are supplied by that usage, those particulars can be supplied by proof of the usage. *Travelers' Insurance Co. v. Hermann,* 154 Md. 171, 140 A. 64". The same reasoning applies if there are other features of the agreement which are not completely stated. Thus, in the case of *Markoff v. Kreiner,* 180 Md. 150, at page 157, 23 A. 2d 19, at page 24, we said "Of course, if a contract is silent as to the manner of payment, and the Court is not certain as to the intention of the parties, extrinsic evidence may be admitted to remove the uncertainty. "

The second contention of the appellant is that the contract of sale is indivisible, part of it is required by the Statute of Frauds to be in writing, and therefore, no part of the contract is enforceable which is not reduced to writing. A short answer to this contention is that the appellees have performed everything on their part to be performed, the land has been delivered to them, they have paid the purchase price in full and taken possession of the property in pursuance of the contract. *Boehm v. Boehm,* 182 Md. 254, at page 265, 34 A. 2d 447. See also *Soehnlein v. Pumphrey,* 183 Md. 334, 37 A. 2d

843, 845, where it is said, "Continued possession of property in pursuance of a contract of sale together with payment by the purchaser of all or a part of the purchase price constitute part performance sufficient to take the case out of the operation of the Statute of Frauds. * * * The reason that a court of equity exercises the power to compel specific performance of an oral agreement under such circumstances is that otherwise the vendor would be enabled to perpetrate a fraud upon the vendee, and thus a statute designed to prevent fraud would operate as an engine of fraud." It seems to be quite clear, from the allegations of the bill of complaint, that appellees entered upon the property, and took possession of it under the terms of their contract, by which the appellant was not only to convey them the title to the property, but was to present them with a house constructed upon it in accordance with the plans and specifications in the Building Engineer's Office. Their possession was referable to the contract, and takes the case out of the operation of the Statute of Frauds.

The final point made by the appellant is that the payment of the purchase price and the acceptance of the deed concluded the contract, and the rights of the parties are thereafter determined by the deed and the original agreement is null and void. There is, of course, a *prima facie* presumption of law arising from the acceptance of a deed. *Buckner v. Hesson*, 159 Md. 461, 150 A. 852; *Levin v. Cook*, 186 Md. 535, 47 A. 2d 505; *Stevens v. Milestone*, 190 Md. 61, 57 A. 2d 292. Here, however, we have a very significant allegation, which, in our opinion, overcomes this presumption. It is the statement in the bill that the appellees were denied an opportunity to inspect the house by the appellant, and accepted it upon a representation that it was completed as agreed upon. Since they were denied inspection by the appellant, it cannot use its own action and representation that the house had been completed according to the specifications, to set up a bar against the appellees. The deed was not accepted with knowledge of the facts, either actual or

presumed. It was accepted, according to the bill of complaint, by reason of a false representation, and the appellees should not, therefore, lose their rights by reason of an acceptance under such circumstances.

It does not, however, follow that they can now compel the appellant to do all of the things which are required by the specifications. Some of the things left undone may have been visible from the outside, and as to these they will be held to have been waived when appellees accepted the deed. As to others, it may be impossible now to reconstruct the house, especially as to relaying floors, and the only reasonable remedy will be to provide compensation in the form of money damages. However, all of this is subject to proof, and the appellant may contend, and may be able to show, that it complied with all of the specifications. Some of the things complained of may be due to wear and tear, and others to unwise specifications. The deed was delivered on November 6, 1946, and the first bill of complaint was filed on October 28, 1947. While appellees allege that they "seasonably and repeatedly" requested the appellant to complete the house properly, they must show that the things complained of were due to appellant's omissions, substitutions, or defective construction, and that they made demand on appellant promptly after discovery of the alleged breach of contract. Such questions of fact are for the Chancellor. We are now concerned only with the question of whether the bill as a whole is sufficient to require an answer, and we think it is.

*Order affirmed with costs.*