## KERSHAW *v.* KERSHAW

[No. 159, October Term, 1949]

*Decided May 10, 1950.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Isidor Roman* for the appellant.

*Samuel J. Aaron,* with whom was *Stafford H. Plimack* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a bill for divorce a vinculo, brought by the husband against the wife, and a cross-bill for the same kind of absolute separation, filed by the wife against the husband. The husband is 53 years old and the wife, 48. They have been married 29 years and they have two grown children. In June, 1947, they were living on a farm in Delaware. The grown son was living with them, and his married daughter and her husband were living somewhere in the neighborhood, on a farm they had. The husband was a boiler maker who had given up working at his trade in order to run the farm. Apparently all of them worked at it, although not without some dissention. On June 2, 1947 (according to the

husband), or on June 12, 1947 (according to the wife), the husband, wife and son were getting in a load of hay. Some dispute arose between the son and the husband as to the lowering of a hay fork. The husband then used some violent language and threw a brick at the son, narrowly missing him. The altercation continued and when the son-in-law and his wife came over that evening, the son-in-law remonstrated with the husband about working the son too hard. He ordered them to leave, which they did the next morning. Apparently their purpose in coming was to help get up the hay, and the husband was angry because the son-in-law was not there the day before. He said that the son was lazy and would not work. The wife and the son and the daughter, however, all say that the whole difficulty was due to the husband's violent temper and his insistence that things be done the minute he ordered them done. That night, June 2nd or June 12th, the husband requested his wife to fix another room for him as he wanted to leave the common bedroom. She said she was unable to move the furniture that night. On the next night she fixed him a single bed in the room where they slept. The following night she fixed him a bed in another room, where he went, and thereafter remained. He does not deny this, but claims that two or three times afterwards he went in his wife's room, but she would not talk to him. When he did this is rather indefinite, but he said the last time was in August.

Subsequently, on July 10th the husband and wife entered into an agreement to sell the farm. This was prepared and signed before a notary public in Delaware, and it was executed under seal. They agreed to sell the joint property, real and personal, and to divide the proceeds equally with the exception of the cattle which would remain the property of the husband. The wife further agreed, in consideration of the division of the proceeds, that she would waive any and all legal rights to any claim for personal support by her husband in the future. In October, 1947, the farm was sold for $7,000. It

does not appear whether there was an oral or a written agreement of sale. However, settlement was made December 15. On November 20th the wife left the farm, and went to live with her daughter and son-in-law. She said she did this because the farm was about to be sold, she would have to leave very shortly thereafter, she had the opportunity then to go and so she did. When settlement for the farm was made on December 15th, there was no settlement for the personal property. The wife received $3,225 and the husband, $3,725. The husband remained on the farm until January 15th, 1948, at which time he had to give possession to the purchaser. Prior to that time his wife filed proceedings for support against him in Delaware, and as a result of that he paid her an additional $750 and she and the son signed a release. She claimed that he owed her $850 and he claimed he owed her some $300. So the figure of $750 was arrived at and paid. This release, which was not under seal, acknowledged the payment of the money and attempted to release the husband from any claim arising out of the contract of the 10th of July, 1947, and ratified the statement in that contract that she would claim no support and maintenance from the husband. She agreed to dismiss the non-support proceedings, and never present to any other domestic relations court a claim for non-support.

On these facts, the Chancellor found for the husband and gave him a divorce on the ground of desertion, which, according to the oral opinion in the case, was based on her leaving the farm on November 20, 1947. He said that leaving the joint bedroom in June by the husband might be construed as desertion, but that could have been patched up, and the real desertion was when she left the farm. The learned Chancellor apparently overlooked the fact that if the desertion was in November, 1947, 18 months had not elapsed before the bill of complaint was filed on January 25, 1949. The decree will, therefore, have to be reversed, in any event, for that reason.

While abandonment by one party to a marriage, by refusal to continue marital relations, is always carefully scrutinized, and requires corroboration even though the divorce is contested, *Jones v. Jones*, 186 Md. 312, 313, 46 A. 2d 617, nevertheless, if the facts are clearly established, and are corroborated (as they are in this case), a cause for divorce may be made out. There would not seem to be any doubt that the husband did desert his wife in June, 1947, and the evidence of attempted reconciliation through the kind offices of neighbors does not appear to us to show any clear or sincere desire on his part to repent and to mend his conduct in the future. However, we do not think either party is entitled to a divorce at the present time, because of the agreement of July 10, 1947. It is true that agreement is for the sale of the property, but it contains a statement that if the wife gets her share of the proceeds, she will not claim any personal support in the future from her husband. The agreement was made in Delaware and would have to be construed by Delaware law. We do not attempt to say what is its legal effect as a waiver or agreement not to claim support, but we consider it as at least evidence of an agreement by the parties that they would thereafter continue to live separately, as they were then living at the time of its making. A husband and wife who are living together and operating a farm, do not make an agreement to sell the farm and divide the proceeds, and incorporate in that agreement a statement that the wife will not thereafter ask for support from the husband, without clearly contemplating a complete separation. And both of the parties acted on the agreement. They sold the farm, the wife left about three weeks before the settlement was to be made, the husband stayed until the time was up for him to give possession, and said he was about to come to Baltimore when he was arrested for non-support. But even this non-support case in the Delaware court seems, from the testimony, to have been instituted by the wife primarily for the purpose of getting her share of the proceeds of the personal property.

314

When the second agreement was signed, the husband came to Baltimore, the wife remained in Delaware. She did not call on him for any further support until he filed his bill of complaint in the Circuit Court No. 2 of Baltimore City. Thereafter she filed her cross-bill.

It is our conclusion from all of these facts that these parties entered into an agreement to live separately and have lived separately pursuant to such agreement, but since the time at which a divorce could be granted on that basis has not yet arrived, and since neither of the parties make such a claim, but each relies on the desertion of the other, both bills of complaint must be dismissed. The counsel fee allowed the wife is approved and the taxing of the costs against the husband and the dismissal of the cross-bill are also approved, but that part of the decree granting the husband a divorce a vinculo must be reversed. The decree, therefore, will be affirmed in part and reversed in part, and the case remanded for the passage of a decree in accordance with this opinion.

*Decree reversed in part and affirmed in part and case remanded. Costs to be paid by appellee.*