CRONIN ET AL. TRUSTEES *v.* HEBDITCH
[No. 165, October Term, 1949.]

608

*Decided June 15, 1950.*

Concurring opinion by HENDERSON, J., filed June 17, 1950.

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Wilmer Cronin* and *Lawrence B. Fenneman,* with whom were *N. Paul Cronin* and *William S. James* on the brief, for appellants.

*Edward H. Burke,* with whom were *A. Freeborn Brown, G. Howlett Cobourn* and *Bowie, Burke & Leonard* on the brief, for appellee.

610

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order overruling demurrers to a bill. Plaintiff, a 19-year old widow, filed a bill against the successors in title or interest to her 72-year old husband, to have declared ineffective, null and void, a "separation agreement", dated January 11, 1949, and three *inter vivos* transfers in trust, dated respectively January 2, 1948, March 4, 1948 and March 4, 1948 and to have the assets, instead of the shares of stock, of two corporations treated as assets of the husband or his estate and one-third thereof distributed to her, as widow.

The case is typically one which since June 1, 1950, under Chapter 73 of the Acts of 1950 and Rule 6A of the Rules and Regulations Respecting Appeals, (adopted May 18, 1950), would not be appealable at this stage. Before 1950 it was repeatedly held that an order overruling a demurrer to an entire bill (but not one overruling a demurrer to part of a bill) is appealable. *Laurel Realty Co. v. Himelfarb,* 191 Md. 462, 465, 62 A. 2d 263, 264; *Young v. Cockman,* 182 Md. 246, 248-249, 34 A. 2d 428, 149 A. L. R. 1006. In the instant case, therefore, we consider the demurrers only in so far as they are demurrers to the whole bill. Defendants demur "to the whole bill * * * and to each and every paragraph thereof and to each prayer thereof," and assign fourteen specific reasons for their demurrers. Manifestly, some of the reasons for demurrer, *e.g.,* that the property of a corporation is not the property of its shareholders, are not grounds of demurrer to the whole bill.

On January 14, 1948 (the bill alleges) plaintiff, then eighteen, and John C. Hebditch, then seventy-one, were married. On March 24, 1949, Hebditch, then seventy-two, died. At the time of the marriage plaintiff had no property of her own; at the time of his death she had no separate property and owned no property jointly or by the entireties with him. They had no children. She had never previously been married; he had been twice married and once divorced; his first wife had died. He

left four children by his previous marriages and a number of grandchildren.

Plaintiff lived with Hebditch from the time of the marriage until May 20, 1948, when she left him and "took up her abode with her parents, near Havre de Grace". On September 10, 1948 she filed in Harford County a bill "for separate maintenance and for alimony" on grounds of "cruelty of treatment". On January 11, 1949, while they were living part, plaintiff and her husband executed a "separation agreement", which recites that "unfortunate differences have arisen * * *, which renders it inadvisable that they further continue to live together", and "they have agreed to separate and live apart from each other until due action in the matter of a divorce between them can be had, which action will shortly be instituted in a court of equity, and * * * they have come to an agreement respecting the disposition of the property of each". The "separation agreement" then provides that "in consideration of the premises, the wife hereby releases the husband from all obligations of further support and she releases and relinquishes unto the said husband, his heirs, personal representatives and assigns, all rights and claims by inheritance or descent in any and all of the real property of the said husband now held or hereafter acquired by him, and all rights in anywise growing out of or incident to the said marriage relation; the said wife also further agrees that she will not at any time contract debts upon the credit of the said husband, and that in the said action for divorce or in any other action for divorce growing out of this marriage, she will not make any claim for alimony or counsel fees. The husband, in consideration of the premises, does hereby release and relinquish unto the said wife, her heirs, personal representatives and assigns, all rights or claims of dower, courtesy, descent and all other rights or claims growing out of this marriage between them, and the said husband shall be forever barred from any and all rights of the estate of said wife, whether now owned or hereafter acquired by

612

her. And the said husband, in consideration of the premises, does hereby agree, conditioned upon a decree for divorce, to pay unto the said wife, the sum of Nine Thousand Dollars ($9,000), one Thousand Dollars ($1,000) to be paid at the time of the signing of a decree of divorce, and the remaining Eight Thousand Dollars ($8,000) to be divided into ten equal, annual payments of Eight hundred dollars ($800.00) each, beginning in 1950; and in addition thereto the sum of One Thousand dollars ($1,000) in cash to be paid as required by the said wife for the payment of counsel fees, costs and expenses in connection with her contemplated suit for divorce; and in addition thereto will pay all income taxes which the said wife may owe each year on the said One Thousand Dollars ($1,000) and Eight hundred dollars ($800.00) payments, during the eleven year period. And it is further agreed that the said wife will withdraw the present suit for alimony now pending in * * * Harford County * * *. The said wife agrees to execute with the said husband a joint income tax return for the year 1948, the said husband agreeing to pay all income taxes due for said year on the income of both husband and wife."

After execution of the "separation agreement" plaintiff went with her husband in an automobile to Florida, where she was left with her aunt at West Palm Beach and he went to his winter home at Miami. Argumentative allegations suggest reconciliation and "the full resumption of marital relations" for a short time, "which reconciliation and resumption of marital relations [plaintiff] alleges did occur". After Hebditch's death the separation agreement was recorded.

When plaintiff became engaged to marry him, before their application for a marriage license on January 12, 1948, and continuously thereafter until his death, Hebditch was worth more than $700,000.

After Hebditch's death there were also recorded three revocable deeds from him to J. Wilmer Cronin and himself, as trustees, dated respectively January 2, 1948, March 4, 1948 and March 4, 1948, each "in fact made

without any consideration whatsoever". Plaintiff had no knowledge of the execution of any of these deeds until after Hebditch's death. On January 2, 1948 plaintiff and Hebditch were engaged. The deed dated January 2, 1948 purported to transfer 1500 shares of stock of Coca Cola Bottling Works, Inc., incorporated in 1924, (including 150 shares apparently held by Hebditch as guardian for his children), out of 1642 shares outstanding, and 800 shares of stock of John C. Hebditch Realty Corporation, incorporated in 1939, out of 900 shares outstanding. The aggregate value of these shares of both corporations was indicted by attached stamps to be in excess of $300,000, and in fact was and is "substantially in excess of $300,000." The trustees were to pay the income from these shares to Hebditch, as guardian, and Hebditch, individually, respectively, and after his death, "should I re-marry and my wife survive me, then * * * to set aside five per cent (5%) of said stock and to pay the income therefrom to my widow for and during her natural life" and the income from the remainder of the stock to pay to his children, for themselves and their children, with ultimate distribution to his children and grandchildren, or their descendants, subject to limited provisions for charitable purposes and for care of the family cemetery lot.

One deed dated March 4, 1948, purported to transfer on the same trusts 135 shares of Bottling Works stock and 88 shares of Realty Corporation stock. The other deed of the same date purported to convey on the same trusts two farms near Elkton and certain lots in Havre de Grace, all indicated by stamps to have a value of $50,000 but believed by plaintiff to have "a much greater value."

Hebditch left a will and codicil, date respectively November 21, 1944 and January 17, 1947, which made no provision for a possible widow. He left goods and chattels inventoried at $38,489.75 and bank deposits of $11,232.51, and a farm in Virginia and one in Florida, said to be worth $10,000 and $35,000 respectively.

In the two corporations Hebditch "carried practically all of his wealth. * * * after the execution of said pretended deeds of trust * * * Hebditch continued to exercise the same control over the trust property * * *, without any change whatsoever, and in fact * * * exercised full dominion and control over the trust property up to the moment of his death". The trust deeds are "part of a scheme or device" whereby Hebditch "became free to deal with the major part of his property, money and effects, freely during his life * * * and at the same time * * * did deprive [plaintiff] of the enjoyment of her legal rights in said property after his death. * * * said purported transfers in trust are and were in fact illusory only and each was tainted with the same fraud on [plaintiff's] marital rights, and with respect to [plaintiff] * * * is in fact fraudulent and void."

Plaintiff charges that the "separation agreement" is "null and void and of no effect", (a) by reason of her infancy and "the fact that it is without consideration and is grossly unfair", (b) because, if it is not void but voidable, she hereby repudiates it, (c) because it is against public policy, and (d) because, if it ever had any legal effect, it has been cancelled and annulled by mutual agreement through reconciliation.

If the separation agreement be not declared void, plaintiff "has been wholly deprived, unjustly, unfairly and without consideration, of her marital rights and will receive nothing from her husband's estate."

If the separation agreement be declared void and the trust deeds held valid in all respects, plaintiff "will probably receive as her legal share of her husband's real estate and surplus personal property some small amount and under the deed of trust dated January 2, 1948 an equitable life estate" in certain shares of stock, "which equitable life estate has little, if any, value." In view of the provisions of section 126 (2) of Artcile 81, Code 1947 Supp., Acts of 1947, ch. 156, relating to prorating of federal estate tax, plaintiff "is advised that her one-third share of her husband's real and surplus personal

estate, under the contingency above named, may be worth as little as $10,000, or even less, and possibly nothing". The argumentative allegations of these conclusions do not disclose the facts on which they are based or the manner in which computations are made under Art. 81, sec. 126(2). Whether a revocable transfer in trust is a fraud on marital rights is, under the decisions of this court, to some extent or in some circumstances, a question of degree. See *Inter Vivos Transfers in Violation of the Rights of Surviving Spouses*, Melvin J. Sykes, 10 Maryland Law Review 1; cf., *Bullen v. Safe Deposit & Trust Co.*, 177 Md. 271, 9 A. 2d 581; and *Mushaw v. Mushaw*, 183 Md. 511, 39 A. 2d 465. On these demurrers we find it unnecessary to decide whether or not the trust deeds are valid as against plaintiff.

If the separation agreement be declared void and the trust deeds held ineffective as against plaintiff, and plaintiff held "entitled to her full legal * * * one-third of her husband's real and surplus personal estate", then plaintiff "will receive approximately $200,000 and possibly more."

The principal question argued before us, orally and in the briefs, is whether by reason of plaintiff's infancy, the separation agreement is void or ineffective against her. We think, however, that we should not avoid the more basic question, distinctly raised by the bill, whether, even if plaintiff had been of full age, this separation agreement would have been effective against her, either under the Act of 1931, ch. 220, (Code, Art. 16, sec. 42), or independently of statute.

Both court and counsel below seem to have assumed that enactment of the Act of 1931 was due to the decision of this court in *Harrison v. Harrison*, 160 Md. 378, 153 A. 58. If we make the same assumption, we are not thereby greatly aided in construing the act, since neither the *Harrison* case nor the act made any marked change in pre-existing law.

It has long been held that a separation agreement, (*i.e.*, not an agreement to separate, as such, but an agreement

as to support or property rights during an existing or contemplated separation) may be an acquiescence in abandonment and therefore a bar to a divorce on that ground, *Barclay v. Barclay*, 98 Md. 366, 56 A. 804, but is not *per se* a bar to a subsequent suit for divorce. *Lemmert v. Lemmert*, 103 Md. 57, 63 A. 380. The Act of 1931 is in terms in accord with the *Lemmert* case; in the recent case of *Kershaw, v. Kershaw* 195 Md. 307, 73 A. 2d 223, we in effect followed the *Barclay* case in denying a divorce to a spouse living separate pursuant to a separation agreement—for less than the statutory period under the Act of 1937, ch. 396, or the Act of 1947, ch. 240, (Art. 16, sec. 40, 1939 and 1947), Supp. In *Campbell v. Campbell*, 174 Md. 229, 241, 198 A. 414, 419, 116 A. L. R. 939, it was said, "In *Melson v. Melson, supra*, 151 Md. 196, at page 205, 134 A. 136, 139, it was said in the opinion of the court, as delivered by Judge Parke: 'The agreement of separation was valid as the agreed equivalent of future maintenance by the husband of the wife, although it was invalid as a contract providing for the relinquishment of the right and duty of cohabita- of the Spouses', The Act of 1931, ch. 220, (Code [Supp. 1935,] art. 16, sec. 39A), provides: [quoting the Act in full]." Quotation of the Act of 1931 in this context indicates that it did not materially change the law as stated in the *Melson* case. *In Emerson v. Emerson*, 120 Md. 584, 596-597, 87 A. 1033, 1038, it was said, "The law has generally regarded all agreements made during the pending of the suit for divorce as void, as being against public policy. Too easy is it for the parties to come to such an arrangement on property division as to amount to collusion on the question of the divorce itself. The practice is common, nevertheless, for courts to incorporate in their decrees provisions as to alimony which have been agreed to by the parties. The court, however, must be satisfied that the agreement is not the result of collusion on the main point of the divorce. The practice is to submit the agreement to the court, and if the court is satisfied that it is a proper settlement, it

will receive the sanction of a decree. *2 Bishop on Marriage & Divorce,* § 702; *Nelson on Marriage & Divorce,* § 915. Then the validity of the award depends not upon the agreement, but upon the judgment or decree."

In *Harrison v. Harrison, supra,* a husband sued to require repayment to him of $12,000 paid by him to a trustee under a separation agreement which he alleged to be void as against public policy. This court said, "To the extent to which the agreement might be susceptible of interpretation as an encouragement to a divorce, it is subject to the court's disapproval", *supra,* 160 Md. at page 384, 153 A. at page 60, but held that the husband, being actively and equally implicated in any wrongful purpose, was not entitled to equitable relief from the consequences.

The Act of 1931, Art. 16, sec. 42, provides: "Any deed or agreement made between husband and wife respecting support, maintenance, property rights, or personal rights, or any settlement made in lieu of support, maintenance, property right or personal rights shall be valid, binding and enforceable to every intent and purpose, and such deed or agreement shall not be a bar to an action for divorce, either *a vinculo matrimonii* or *a mensa et thoro,* as the case may be, whether the cause for divorce existed at the time or arose prior or subsequent to the time of the execution of said deed or agreement, or whether at the time of making such deed or agreement the parties were living together or apart; provided, that whenever any such deed or agreement shall make provision for or in any manner affect the care, custody, education or maintenance of any infant child or children of the parties the court shall have the right to modify such deed or agreement in respect to such infants as to the court may seem proper, looking always to the best interests of such infants". Defendants construe the act, sweepingly literally, as validating *in toto* "any" agreement respecting any of the specified subjects, regardless of what unlawful provisions it may contain. We find no basis, in the words of the act, in its history

or in the decisions of this court, for any such construction or for holding that in Maryland any "separation agreement" by which the parties agree that they shall separate or live apart, or one party agrees or purports to release or relinquish, without consideration, all interest in property of value of the other or either party agrees to obtain a divorce or to pay the other party for so doing, is, so far as it is still executory in any of these respects, valid and enforceable. In *Owings v. Currier*, 186 Md. 590, 600, 47 A. 2d 743, we quoted the statement of the court, by Chief Judge Alvey, in *Livingston v. Hall*, 73 Md. 386, 396, 21 A. 49, "A voluntary contract or agreement, that is, without valuable consideration as between husband and wife, a court of equity will never enforce; * * *". In the same case we mentioned a statement in a note "that in jurisdictions where husbands and wives have equal contract and property rights, separation agreements *not disclosing on their face any injustice and inequity* [italics supplied] are presumptively valid and the burden to prove that their execution was caused by coercion, fraud, or mistake is upon the party making the allegation." *Supra,* 186 Md. at page 599, 47 A. 2d at page 747. In the instant case this separation agreement between a penniless wife and a wealthy husband shows on its face that it is without consideration and is unjust and inequitable. Perhaps, if the agreement were not also unlawful on its face, injustice and inequality between the parties might be avoided, without doing violence to the words of the agreement, by construing the whole agreement as "conditioned upon a decree for divorce" and therefore ineffective. The entire agreement, however, is a palpably unlawful agreement to obtain a divorce and to pay $9,000 for it, $1,000 c. o. d., the balance in ten annual deferred payments. The agreement mentions no ground for divorce and seems to imply that none exists and that the divorce bargained for is therefore to be a fraudulent divorce.

Defendants say that if the separation agreement is unlawful, for these reasons, plaintiff cannot maintain

her bill to obtain any affirmative relief either to enforce or to set aside the unlawful agreement. *Harrison v. Harrison, supra.* The short answer to this contention is that plaintiff asks no affirmative relief either to enforce or to set aside the unlawful agreement. She seeks distribution of her share of her husband's estate and asks that the separation agreement be declared to be invalid and ineffective and therefore to present no obstacle to the distribution desired. The agreement to obtain a divorce and to pay for it was wholly executory. The "release" and relinquishment" of her marital rights in his property was part of the consideration for the divorce and for the price, and was on its face invalid and without consideration. There was no outright conveyance of property to be set aside as in *Roman v. Mali,* 42 Md. 513.

A more far-reaching answer to defendant's contention is indicated in *Messick v. Smith,* 193 Md. 659, 69 A. 2d 478, Id., 72 A. 2d 249. In a suit between parties to an unlawful contract or other transaction the defense *in pari delicto* is predicated upon both parties being not only at fault but equally at fault. To determine whether in a particular case the parties are equally at fault, it may be necessary to consider whether the policy of the law would be better promoted by denying recovery or by permitting recovery in whole or in part. In *Seeley's Appeal,* 56 Conn. 202, 14 A. 291, a widow was awarded dower in her husband's estate though she had already received full payment of the amount specified in a separation agreement which was held void as against public policy. The court said it was better that the husband's estate should pay too much than that husbands and wives should be tempted to assist each other in procuring a divorce. In the instant case the separation agreement is not only an unlawful agreement to obtain, and to pay for, a divorce, but also an unjust device to deprive the wife of her marital rights without any consideration at all unless the divorce were obtained. We think the policy of the law would be better promoted by giving

plaintiff her marital rights than by consummating the unjust purpose of the agreement by declaring her rights lost. Even if the wife's infancy does not *per se* invalidate the separation agreement, it would be a circumstance against finding husband and wife *in pari delicto*.

Our conclusion that the separation agreement is invalid for the reasons stated makes it unnecessary to consider whether it is invalid because of plaintiff's infancy or because of alleged reconciliation.

It follows that the bill states a case, at least as to the separation agreement, and the demurrers to the whole bill were properly overruled. "Multifariousness" and "misjoinder of parties defendant", as reasons for demurrers, technically may be objections to the whole bill, but disposition of these objections depends primarily upon questions which do not relate to the whole bill but only to particular facts or aspects of the bill. We express no opinion on these objections or on any other questions which we have not decided.

*Order affirmed, with costs, and cause re-*
*manded.*

HENDERSON, Judge (concurring in the result).

I think the overruling of the demurrer can be sustained on one or all of the following grounds:

(1) that the agreement is voidable because of the infancy of the appellee, (2) that the agreement is unfair in the light of the confidential relationship, or (3) that the agreement is a fraud upon her marital rights in the light of the circumstances alleged. The opinion of this court glosses over these points and reaches out to rest the decision upon the ground that the agreement on its face is unenforceable and illegal, although the parties are not in *pari delicto*. I think this holding ignores the plain language of the statute, substitutes the court's view of public policy for that of the legislature, and decides the case on a point not considered by the chancellor and not argued in this court.

The language of Article 16, Section 42 is clear and unambiguous. Its adoption came immediately after the decision in *Harrison v. Harrison*, 1930, 160 Md. 378, 153 A. 58. It has been widely assumed that it was designed to modify the pre-existing law as laid down by the courts and encourage the settlement of property rights, and rights to alimony or support, by removing the risk that such settlements might be held invalid or a bar to subsequent proceedings for divorce. Cf. 2 Maryland L. R. 363 and 7 Maryland L. R. 150. It was a logical forerunner of the statute that now recognizes mutual consent, without regard to fault, as an independent ground of divorce. Both acts evidence a new and realistic approach to the problem by recognizing that the courts cannot, if they should, compel an unwilling cohabitation, and that collusion to obtain a legal separation is at least preferable to perjury as to the assigned ground or a suppression of the real cause, of which the parties themselves are not always fully aware because of the psychological factors involved. It seems peculiarly unfortunate for this court to revive an archaic doctrine in the teeth of Section 42.

In the late case of *Kershaw v. Kershaw*, 195 Md. 307, 73 A. 2d 223, we did not cite or construe this section. The parties sold their farm, divided the proceeds, signed mutual releases and went their separate ways, without convincing evidence of regret on either side. We held that under the circumstances, of which the agreement was one, neither party could claim desertion by the other. There was no intimation that the agreement itself was invalid or a bar to further proceedings *per se*.

In the instant case, if the agreement had been a fair one, made after full disclosure by adult parties, the mere fact that it contemplated, or was conditioned upon, subsequent proceedings for divorce would not, in my opinion, render it void or bar action upon grounds otherwise adequate. I think the decision should have been placed upon the other grounds suggested.