## BUCHHOLTZ *v.* BUCHHOLTZ

[No. 2, September Term, 1963.]

*Decided October 7, 1963.*

The cause was argued before the full Court.

*Earl E. Manges*, with whom was *Harold E. Naughton* on the brief, for the appellant.

*Edward J. Ryan*, with whom was *William L. Wilson* on the brief, for the appellee.

Brune, C. J., delivered the opinion of the Court.

This is an appeal by a wife from a decree of the Circuit Court for Allegany County which awarded her husband a divorce *a mensa et thoro* on the ground of abandonment. The decree also awarded to the wife custody of the two minor children of the parties, both boys, now aged respectively about nine and seven years, and provided for payments by the husband for their support and for rights of visitation. The husband took no cross-appeal but seeks in this Court to attack the award of custody to the wife. The decree contained other provisions determining the ownership of personal property, and neither party complains of those provisions.

The parties were married in 1952, and their married life appears to have been free of serious discord for some years, though there was one incident in 1955 or 1956 when the husband struck the wife. More important causes of the trouble which subsequently developed between them were that the husband kept rubbing in the fact that the home in which the parties lived did not belong to the wife at all, but to his parents, who appear not to have been on the best of terms with the wife. On the other side, the husband was deeply offended when the wife had him haled into the Juvenile Court on a charge of failure to support the children. Both parties were gainfully employed, and to a large extent the children were taken care of by a housekeeper. There were some disagreements over financial matters and religious differences also contributed to discord. Relations between the parties became very strained, marital relations ceased, and after discussing their problems and

differences they met at the office of the husband's lawyer on October 3, 1962, and discussed a separation agreement. This episode will be more fully referred to below. The day following that visit the wife actually left what had been the marital domicile, took the children and most of the furniture with her and went to live elsewhere. She also took with her the husband's wedding ring which he had taken off and had left in rather plain view on the kitchen windowsill. He explained this by saying that he noticed that his wife was not wearing her wedding bands, though he did not know what she had done with them. The following day the husband filed this suit.

The Chancellor pointed out in his opinion that "[T]he case is remarkably free from any conflict in the testimony." The case is largely one of the interpretation to be placed upon facts as to which there is virtually no dispute, rather than one of credibility of the witnesses. The key to the case is, we think, to be found in the conference at the office of the husband's counsel on October 3, 1962, and in the events of the subsequent two days.

With regard to some of the events that preceded and led up to that conference, the husband testified that after his wife had him brought before the Juvenile Court he "sort of lost all interest in her for doing such a thing; and from that time on things were getting a lot worse than getting better." He further admitted that he had left her bedroom, but said that he didn't do it until the wife was taking the boys from him on the week-end. He claims that various small articles were missing from the home, that the boys' toys, bicycles and electric trains "were gone," that he talked to his wife about them and that she told him that it was none of his business. He further claims that he heard her state over the telephone to her brother that all her plans had been made and that she was thinking only of herself. "So," he testified, "I assumed that maybe she was going to take everything out of the home." He further states that this was why he went to see his counsel, Mr. Ryan.

Whether or not this account was in any way influenced by hindsight, the fact is that Mr. Ryan wrote Mrs. Buchholtz a letter asking her to come in to see him. Mr. Ryan stated (though he did not testify) that his purpose was to seek to

effect a reconciliation. On October 3, 1962, Mr. Buchholtz, according to his own testimony on cross-examination, was at Mr. Ryan's office, but did not know that his "wife was going to be there that exact day, but she came in and, of course, we were arguing back and forth in front of Mr. Ryan there and Mr. Ryan made the statement a couple times that we weren't getting anyplace." The husband's testimony continues: "As a matter of fact, we weren't, and he [Mr. Ryan] said something about a separation. He asked me, 'Do you think that a separation would be in order?' and I made the remark, I said, that we had seemed to try everything else so *I said a separation is in order*. That was on October 3rd *and I thought more or less that was agreed upon* and the next thing I knew the next day my wife had taken everything out of the home." (Italics supplied.) The next two questions and answers were these: "Q. You hadn't agreed on anything, had you? A. Well, we hadn't signed any papers. Q. You hadn't agreed on anything at all? A. Not exactly."

The wife's version of this conference was much the same. She testified that she was at Mr. Ryan's office on October 3rd on which day "my husband sat there * * * and he said that he would take separation, that he was tired of living with me, that he wanted the house left as it was, the furniture left in it and also the two kids. Mr. Ryan looked around at me and said, 'I guess you know you have to get out because the house belongs to his people.' " In cross-examining the wife, Mr. Ryan denied having made this last statement, but he did not testify.

Whether or not Mr. Ryan made that statement, we think that the legal conclusion from other testimony of the parties, as to which they are in substantially full agreement, is that the actual departure of the wife was with the husband's consent, and was by mutual assent or agreement. This would not, in our opinion, constitute abandonment. It is doubtless true that the fact that she took nearly all of the furniture and the children with her was not in accord with the husband's desire, but it seems clear that he favored her departure. His taking off his wedding ring and leaving it where she was bound to find it amounted to silent notice of his wish to bring their marriage to an end, and his celerity in filing this suit the day after her

departure further emphasizes his wish to terminate it. A separation by consent does not constitute an abandonment of one spouse by the other. *Melson v. Melson,* 151 Md. 196, 202, 134 A. 136;[1] *Miller v. Miller,* 185 Md. 79, 85, 42 A. 2d 915; *Matysek v. Matysek,* 212 Md. 44, 128 A. 2d 627, and cases therein cited. See also *Kershaw v. Kershaw,* 195 Md. 307, 73 A. 2d 223, and *Cronin v. Hebditch,* 195 Md. 607, 74 A. 2d 50, in which the property settlement agreements there involved were held sufficient to show acquiescence in abandonment and hence were a bar to divorce on that ground. At the time these cases were decided and now a property settlement agreement does not *per se* bar a divorce. Code (1957), Art. 16, § 28; *Kelsey v. Kelsey,* 186 Md. 324, 46 A. 2d 627. And see a note on the *Cronin* case, 11 Md. L. Rev. 350, and Myerberg, *Practical Aspects of Divorce Practice* (2d Ed.), p. 77.

The question of a divorce *a vinculo* on the ground of separation by mutual consent is not before us in this case. Code (1962 Cum. Supp.), Art. 16, § 24. The present statutory period of eighteen months had scarcely begun to run when this suit for a divorce was commenced, and voluntary separation for less than the period which would warrant a divorce *a vinculo* is not a ground for divorce *a mensa et thoro* under Code (1957), Art. 16, § 25.

In accordance with the above views we must reverse the decree of the Circuit Court insofar as it granted the husband a divorce *a mensa* on the ground of abandonment. With the reversal of that portion of the decree granting a divorce, the provisions for the division of property also fall and must be reversed. *Blair v. Blair,* 199 Md. 9, 85 A. 2d 442; *Schwartzman v. Schwartzman,* 204 Md. 125, 102 A. 2d 810.

The reversal of the decree as to the granting of a divorce and the division of property does not, however, affect that portion of it which deals with the custody and support of the minor

---

1. Since the *Melson* case was decided, voluntary separation for a specified period of time, if deliberate and final and without reasonable expectation of reconciliation, has been made a ground for a divorce *a vinculo;* and a property or separation agreement is not ordinarily a bar to a divorce. Code (1962 Cum. Supp.), Art. 16, § 24; (1957 Ed.), Art. 16, § 28.

children. Code (1957), Art. 16, § 25; *Sause v. Sause,* 192 Md. 88, 63 A. 2d 632; *Mower v. Mower,* 209 Md. 413, 419-20, 121 A. 2d 185, 188; *Smith v. Smith,* 216 Md. 141, 140 A. 2d 58; *Koger v. Koger,* 217 Md. 372, 142 A. 2d 599. Since no cross-appeal was taken by the husband from the portion of the decree dealing with these matters, there is nothing before us for decision with regard thereto.

In view of our decision on the matter of granting the husband a divorce, we find it unnecessary to pass upon a question raised by the appellant as to the exclusion of certain evidence.

> *Decree reversed in part and affirmed in part, and case remanded for the entry of a decree in conformity with this opinion; the costs to be paid by the appellee.*